JABEZ A. BOSTWICK, Appellant, *v.* THE BALTIMORE AND OHIO RAILROAD COMPANY, Respondent.

When goods are shipped under a verbal agreement for the transportation thereof, such agreement is not merged in a bill of lading, partly written and partly printed, delivered to the shipper after he has parted with control of his goods, although such bill of lading, by its terms, limited the liability of the carrier and expressed on its face, that by accepting it, the shipper agreed to its conditions. The mere receipt of the bill, after the verbal agreement has been acted on, and the shipper's omitting, through inadvertence, to examine the printed conditions, are not sufficient to conclude him from showing what the actual agreement was, under which the goods had been shipped.

(Argued May 18th; decided June 22d, 1871.)

APPEAL from a judgment of the Supreme Court at General Term in the first district, overruling exceptions taken by the plaintiff at the trial, and dismissing the complaint.

The action was brought to recover the value of sixteen bales (part of fifty-four bales) of cotton, shipped by the plaintiff from Cincinnati to New York. The agreement for transportation was made at Cincinnati between the 12th and 15th of November, 1865, by the plaintiff, with Grant F. Cooke, as agent for a line of railroads, of which that of the defendant formed a part. The plaintiff testified, that he contracted with Cooke for the carriage of the fifty-four bales of cotton from Cincinnati through to New York by "*all rail*," and agreed to pay "all rail" rate, which was $1.60 per hundred pounds, the rate by rail and water being at that time $1.50. The entire freight was to be paid in New York. After making this contract, the plaintiff delivered the cotton at the depot, and took depot receipts, and sent these receipts to the office of Cooke to obtain bills of lading. Cooke did not deliver any bill of lading at the time, but one or two days afterward sent to the plaintiff's office a bill of lading, signed by himself as agent of the line, dated November 15th, for the fifty-four bales. The cotton had at that time been shipped. It would take about one week to transport it from Cincinnati to New York.

The cotton was conveyed by rail to Baltimore, and there shipped on steamers for New York. Thirty-eight bales went through safely to New York; thirty-five of them were received there on the 23d of November, and three on the 29th. The consignees paid to the defendant, at New York, the entire freight on the fifty-four bales from Cincinnati through. The custom of the companies was to send notice to the consignee of the arrival of the vessel, and to demand the freight, before delivery of the goods.

The sixteen bales were never delivered. On the 11th of December the consignee received a notice dated the 5th of December, that the cotton was on board the steamer Alleghany, and afterward received information that the sixteen bales were lost. It was admitted by the defendant on the trial that the sixteen bales were shipped at Baltimore for New

York on board the steamer Alleghany, which was wrecked on the passage.

The defendant claimed exemption from liability by reason of certain printed conditions, contained in the bill of lading, to the effect that the goods should be transported by certain railroad companies to Columbus, and there delivered to the Central Ohio railroad, and by it transported to Belle Air, and there delivered to the agents of the next connecting steamboat, railroad company or forwarding line, and that the railroad companies and the steamboat companies with which they connected should not be liable for loss or damage by the dangers of navigation while on the sea, rivers, lakes or canals; that each company should be answerable only for losses happening while the goods were in its custody, and that by accepting the bill of lading the shipper agreed to its stipulations and conditions.

The plaintiff testified that his attention was not called to these printed conditions; that the rate of freight was written in the bill of lading as $1.60 per 100 lbs., which was the all rail rate; that he was aware of the fact that goods shipped from Cincinnati for New York sometimes came by water from Baltimore; that the defendant was in the habit of shipping by " all rail," or " rail and water;" that when they shipped by rail and water they meant around by sea, and charged ten cents per 100 lbs. less.

The defendant's counsel moved to dismiss the complaint on the grounds, 1st. That it had not been proved that Cooke could make any bargain for the defendant.    2d. That the contract had been reduced to writing, and that the rights of the parties must be governed by the bill of lading.

The plaintiff asked the court to submit the questions of fact to the jury; also to direct a verdict for the plaintiff.    Exceptions were duly taken.    The court granted the motion for a nonsuit, and directed the exceptions to be heard in the first instance at General Term.

The court, at General Term, overruled the plaintiff's exceptions, and ordered judgment dismissing the complaint.

*D. M. Porter*, for the appellant, cited *Bancroft* v. *Winshear* (44 Barb., 209); *Le Sage* v. *G. W. Railway* (1 Daly, 306); *Blossom* v. *Griffin* (3 Kern., 569); *Wilcox* v. *Parmlee* (3 Sandf., 610); *Belger* v. *Dinsmore* (34 How., 421); *De Barre* v. *Livingston* (48 Barb., 511); *Fish* v. *Hubbard's Exrs.* (21 Wend., 657); *Smith* v. *N. Y. Cent. R. R.* (43 Barb., 225); *Bradley* v. *Washington, etc.* (13 Peters, 89); *Spencer* v. *Babcock* (22 Barb., 326); *Scovill* v. *Griffiths* (2 Kern., 509); *Dana* v. *Fiedler* (2 Kern., 40); *Pollen* v. *Le Roy* (30 N. Y., 549); *Woodruff* v. *Com. Ins. Co.* (2 Hilt., 122); *Coope* v. *Smith* (1 Smith's Lead. Cas., 305); *Johnson* v. *N. Y. Cent. R. R.* (33 N. Y., 610); *Miller* v. *Steam Nav. Co.* (6 Seld., 431); *Gould* v. *Chapin* (20 N. Y., 259); *Schrouder* v. *Hudson Riv. R. R.* (5 Duer, 55); *Hart* v. *Rens. R. R.* (4 Seld., 37); *Quimby* v. *Vanderbilt* (17 N. Y., 306); *Read* v. *Spaulding* (30 N. Y., 630); *Michaels* v. *N. Y. Cent. R. R.* (id., 564); *McAndrews* v. *Adams* (1 Bing. N. C., 29); *Finn* v. *Simpson* (4 E. D. Smith, 276); *Camden and A. R. R.* v. *Burke* (13 Wend., 611); *Pemberton* v. *Bailey* (8 Wend., 600); *Stillwell* v. *Coope* (4 Den., 225); *Hurd* v. *Pendrigh* (2 Hill, 502); *Brooks* v. *Ball* (18 John., 337); *Wright* v. *Hooker* (12 N. Y., 59); *Sheldon* v. *Atlantic, etc., Ins. Co.* (26 N. Y., 460).

*Amasa J. Parker*, for the respondent, cited *Renard* v. *Sampson* (2 Kern., 561); S. C., 2 Duer, 285; *White* v. *Van Kirk* (25 Barb., 16); *Crerry* v. *Holly* (14 Wend., 26); *Hutchins* v. *Hibbard* (34 N. Y., 24); *First Bap. Ch.* v. *Brooklyn Fire Ins. Co.* (28 N. Y., 153); *Schoeppel* v. *Oswego and Syr. Pk. Rd. Co.* (7 How., 94); *Budland* v. *Van Nostrand* (24 Barb., 25); *Isles* v. *Tucker* (5 Duer, 393).

RAPALLO, J.  No evidence was introduced on the part of the defendant showing any limit to the authority of Cooke in making contracts for transportation by the line in question. That he was the agent of the defendant and the other companies for the making of such contracts, is shown by the

facts, that a portion of the bales shipped under the contract made by him were carried through, and that the defendant received the freight for the entire distance on all the bales, according to the contract; that on the face of the bill of lading, of which the defendant claims the benefit, the name of Cooke is printed as agent, at Cincinnati, of the line of transportation of which the defendant's road forms a part, which purports to be a through line, and that the bill is signed by him as such agent.

In the absence of any explanation by the defendant, these facts were at least *prima facie* evidence of the authority of Cooke to make the verbal contract testified to by the plaintiff.

There was no contradiction attempted of the evidence of the plaintiff that he made a verbal contract with Cooke for the transportation of the fifty-four bales through to New York by "all rail," and agreed to pay the all rail route. The goods were shipped under this verbal agreement, before any written contract or bill of lading had been tendered to the plaintiff.

The verbal agreement had been acted upon, and under it the plaintiff had parted with all control over his goods.

The rule that prior negotiations are merged in a subsequent written contract does not apply to such a case as this.

If the plaintiff had expressly assented to the terms of the bill of lading subsequently delivered to him, such assent would operate as a change of the terms of the contract originally made, and under which he had parted with his property. But after the verbal agreement had been consummated and rights had accrued under it, the mere receipt of the bill of lading, inadvertently omitting to examine the printed conditions, was not sufficient to conclude the plaintiff from showing what the actual agreement was under which the goods had been shipped.

In the case of *Corey* v. *The N. Y. Cent. R. R. Co.*, decided in April, 1871, not reported, we held that conditions contained in a bill of lading, not delivered until after the shipment and

loss of the goods, though before the loss was known, did not control the rights of the shippers.

The present case is analogous in principle to the one cited.

The goods having been shipped under an agreement that they should be carried "all rail," a loss occasioned by their being carried by sea is no excuse for their non-delivery to the plaintiff.

There was also some evidence of delay in sending forward the portion of the goods which was lost. This delay, unexplained, tended to show negligence on the part of the defendant.

It is true that there is no allegation of negligence in the complaint. But the complaint alleges the non-delivery of the goods, which was a breach of duty on the part of the defendant, unless excused.

The defendant sets up, in excuse, the conditions of the bill of lading, and the loss of the goods by the dangers of navigation. Even if the conditions were binding upon the plaintiff, it was competent to rebut this defence by showing that the goods became exposed to the danger by reason of the default of the defendant, and that if they had been forwarded with due diligence, they would not have been on board of the vessel which was lost. (*Michaels* v. *The N. Y. Cent. R. R. Co.*, 30 N. Y., 564.)

If there was negligence on the part of the defendant in sending forward the goods, the conditions of the bill of lading would not exempt the defendant from liability.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur. Judgment reversed and a new trial ordered.