James L. Lamb *et al.* *v.* The Camden & Amboy R. R. Co.

Plaintiffs agreed with a common carrier of freight for the transportation of certain bales of cotton at a specified rate of freight. At the time the agreement was made, no bills of lading or shippers' receipts were given by the carrier, but after the goods had been shipped, receipts were sent to the shippers containing a clause exempting the carrier from liability for loss by fire, but this clause was not brought to the notice of the shippers until after the cotton had been destroyed by fire. *Held*, that the carrier was liable for the loss.

Appeal by defendants from a judgment entered on the verdict of a jury at trial term.

This was the second trial of the cause. On the first trial, the only evidence of the contract under which the goods were carried was the bills of lading. The plaintiffs had a verdict, and the judgment entered thereon was affirmed by this court at general term (reported in 2 Daly, 454), but reversed by the Court of Appeals (reported in 46 N. Y. 271).

On this trial the plaintiffs had a verdict for $114,235 42. The facts necessary to an understanding of the points raised on this appeal are stated in the opinion.

*Charles F. Sandford*, for appellants.

*Luther R. Marsh*, for respondents.

BY THE COURT.*—ROBINSON, J.—This action was brought to recover from the defendants, common carriers between Philadelphia and New York, the value of 137 bales of cotton belonging to plaintiffs, which (with other property of the plaintiffs) they carried to New York in July, 1864, and before delivery was destroyed by fire. This cotton constituted a portion of 790 bales shipped by plaintiffs in June, 1864, at Cairo, Illinois, with the Illinois Central Railroad Company, for transportation to New York, and was carried by that company to Chicago, and reshipped by them there for New York by "The Union Transportation & Insurance Company," proprietors of the Union line, and by this latter company, on its arrival at Philadelphia, delivered to the defendants, by whom it was carried to New York, where these 137 bales were accidentally burned.

Defendants claim that the cotton was received and carried by them in part performance of a special agreement made by plaintiffs with the Illinois Central Railroad Company, for its transportation from Cairo to New York at the through rate of $2 per 100 lbs., "upon the express condition that the carriers of the cotton should not be liable for any loss by fire;" that, on the arrival of the cotton in New York, they notified the consignees of its arrival; that the latter neglected to remove this quantity in due season, and it was accidentally consumed by fire, without negligence on the part of the defendants.

On the part of the defendants, bills of lading or shippers' receipts for the 790 bales of cotton, issued as well by the Illinois Central Railroad Company as by the Union line, were produced in evidence, each of which contained an exemption of the company from liability from loss by fire, but it is not shown,

---

* Present, DALY, Ch. J., ROBINSON and LOEW, JJ.

nor can it be legally claimed upon any of the facts proven, that defendants are not liable for this claim of loss, except by force of the exemption contained in the bills of lading issued by the Illinois Central, under which they allege they received and carried the cotton to New York. Plaintiffs, against defendants' objections, were allowed to introduce evidence tending to establish that the agreement they made with the Illinois Central was verbal, and for the transportation of this cotton to New York by that road, and its connecting roads, at $2 per 100 lbs.; that such company so agreed to carry it to Chicago, and then forward it " all rail " to New York at that rate of freight; that in this contract no such limitation of responsibility for loss by fire was suggested or agreed upon; that a Mr. Halliday, who had the cotton in charge, for putting it in order, and draying it to the cars, was then instructed, after shipping it, " to take the bills of lading, and forward them to New York," such special authority to the latter being given with the knowledge of the general and local freight agent of the road with whom the contract was made; that the cotton was all delivered to that company under such parol agreement; that plaintiffs then left, and had no knowledge of the nature of the bills of lading subsequently issued, and produced in evidence by the defendants, or of the special exemption clause therein, until after the cotton was burned; that after plaintiffs had left Cairo, and the cotton had been partly shipped on board the cars, and gone forward, a clerk of Mr. Halliday prepared these bills of lading, and had them signed by another clerk of the Illinois Central, and Halliday himself never knew of nor acquiesced in any such exemption clause, and both the general and local agent testify that no such exemption was alluded to when the agreement was made.

The question whether these bills of lading embodied the contract, or were subsequently issued without plaintiffs' acquiescence, or under such action taken by Mr. Halliday or his clerk, as was within any authority conferred by plaintiffs, seems to have been, necessarily and fairly submitted to the jury.

The case of *Bostwick* v. *The Baltimore & Ohio R. R. Co.* (45 N. Y. 712) has established that the shipper who has

parted with the control of his goods to the carrier under a verbal agreement for their transportation, is not deprived of any of his common-law rights by subsequently receiving a bill of lading containing special conditions and limitations, to which his attention was not called, and, through inadvertence, they have not come to his knowledge or notice.

The testimony fully warranted the charge and submission of the question to the jury, whether the plaintiffs had ever assented to any such limitations upon their common-law rights. The only plausible ground for contending that they did so arose from what was done by Halliday's clerk, in so far as it can be claimed that what was done by him brought the case within the principles decided in *Nelson* v. *The Hudson River Railroad Co.* (48 N. Y. 498). In that case the agent was entrusted with the goods to ship, and to *make a contract* for their transportation, and the carrier refused to receive them otherwise than under restrictions and upon the terms of the special contract. This case possesses no such feature. The agreement had been fully made by and with the plaintiffs, and all the agent had to do was to deliver the cotton, and " take bills of lading " in conformity to the precise terms, and send them to New York. The goods had already been accepted under the verbal agreement, and neither Mr. Halliday nor his clerk had any right or authority to make any new bargain, or to accept bills of lading variant from the original contract. Upon the proofs offered, the jury were warranted in finding that these bills of lading were never agreed to or acquiesced in by the plaintiffs, and that the goods were accepted by the Illinois Central for transportation without any modification of their common-law rights or liabilities, except as to the freight and duty to forward the cotton to New York from Chicago by " all rail." The Illinois Central, being without exemption from liability for loss by fire, could confer no such right on the Union line or the defendants, to the prejudice of the plaintiffs. The various rulings of the judge on the trial, and the several propositions of law contained in his charge to the jury, accord with these views, and were liable to no just exception.

Judgment affirmed.