————o————

WILLIAM PRUITT, Respondent, *vs.* THE HANNIBAL & St. JOSEPH RAILROAD COMPANY, Appellant.

1. *Railroads—Stock, transportation of—Receipt of, what implied.*—The reception of hogs in the pens of a railroad company for transportation is equivalent to an obligation to transport them without unnecessary delay.

2. *Railroads—Monopoly by government—Common carriers, duty of.*—If the government monopolizes a railroad, to relieve itself from liability the company should abdicate its functions as a common carrier for the public at large.

3. *Common Carriers—Railroads—Probable business—Duty as to providing for.*—When a common carrier can reasonably judge of the demands probably to be made on it, in addition to its ordinary business, it is presumed to have made arrangements to meet such demands without interfering with its ordinary business.

4. *Railroads—Station agents, power of, to contract for freight.*—Station agents are to be presumed to have power to make contracts for their railroads for the transportation of freight. The limitations on their powers the public cannot take notice of, unless they are conveyed to the public in such a manner as to authorize the inference that shippers are apprised of them.

| 62 | 527 |
| 36a | 491 |
| 62 | 527 |
| 54a | 671 |
| 62 | 527 |
| 62a | 260 |
| 62 | 527 |
| 66a | 391 |
| 62 | 527 |
| 72a | 38 |
| 62 | 527 |
| 79a | 526 |
| 62 | 527 |
| f 156 | 336 |
| 62 | 527 |
| 161 | 488 |
| 62 | 527 |
| 169 | 10 427 |
| 62 | 527 |
| 101a | 8 427 |

5. *Common carriers—Contracts—Unforeseen occurrences.*—Common carriers are excused from literal performance of their contracts if unforeseen occurrences, such as the law recognizes as sufficient, should occasion slight delays.

6. *Contracts, breach of—Damages, what allowable.*—The damages to be allowed on a breach of contract must be such as are foreseen, or might be foreseen, as likely to result from a breach of the contract or obligation assumed or implied.

7. *Railroads—Transportation —Snow storms —Delays.*—Snow storms of such violence as to obstruct the passage of trains must be allowed to excuse delays by a railroad in transporting articles during the continuance of the obstruction.

8. *Practice, civil—Trials—Stock, exposure of—Injury—Question for jury.*— Whether exposure of hogs in uncovered pens, for twenty-five days in December, might not reasonably be expected to result in considerable loss from exposure and smothering, is a proper question to be left to the jury.

9. *Railroads—Stock, transportation of—Negligence, when prima facie.*—A delay of twenty-five days in shipping one drove of hogs, and of forty-one days in shipping another drove, might be termed *prima facie* negligence on the part of the railroad, inexcusable unless by the total cessation of all business for the public.

10. *Damages—Act of God—Concurring negligence.*—The latest decisions of this court incline to the opinion, that where the negligence of the defendant concurs in and contributes to the injury, he is not exempt from liability on the ground that the immediate damage is occasioned by the act of God or inevitable accident.

### Appeal from Caldwell Circuit Court.

*James Carr*, for Appellant.

I. There was a very sudden and great influx of business thrown upon the road for transportation far exceeding its capacity. This was a legal excuse for not shipping the hogs with promptness. (Balentine vs. North Mo. R. R. Co., 40 Mo., 491; Wilbert vs. N. & E. R. R. Co., 12 N. Y., 245; Galena & Chicago Union R. R. Co. vs. Rae, 18 Ill., 489; R. R. Co. vs. Reeves, 10 Wall., 176; Denny vs. N. Y. C. R. R. Co., 13 Gray, 481; Morrison vs. Davis, 20 Penn. St., 171; Clark vs. Pac. R. R. Co., 39 Mo., 184.)

II. Such snow storms and such unheard of cold weather constitute a legal excuse for failing to ship the respondent's hogs. (See authorities cited *supra*.)

III. The United States monopolized the road, as it had a right to do by the road's charter, for the transportation of

troops or munitions of war, in preference to all other persons. (Act of incorporation of appellant, approved Feb. 16, 1847.)

IV. The plaintiff's instructions presented an *ex parte* view of the case to the jury. (Goetz vs. Han. & St. Jo. R. R. Co., 50 Mo., 472 ; Sawyer vs. Same, 37 id., 240 ; Clark vs. Hammerle, 27 id., 55 ; Thomas vs. Babb, 45 id., 384; Mansfield vs. Corbin 2 Cush., 151.)

V. The plaintiff's fourth and fifth instructions lay down no legal measure of damage to guide the jury in assessing damages, and should have been refused. (Clark vs. Pacific R. R. Co., 39 Mo., 184; Balentine vs. N. M. R. R., 40 Mo., 491.)

VI. The plaintiff's sixth instruction is a departure from the issues made by the petition and answer, alleging favoritism in shipping which is not alleged in the petition. It is calculated to mislead the jury. (Balentine vs. N. M. R. R. Co., 40 Mo., 491 ; Moffatt vs. Conklin, 35 Mo., 453.)

VII. The seventh instruction is erroneous in that it ignores the shrinkage of the hogs on account of the excessively cold weather, and the acts of the hogs themselves, in bunching, piling and smothering each other. The effect of this instruction is not counteracted by the giving of an instruction on the same point at the request of the appellant. (Goetz vs. H. & St. J. R. R. Co., 50 Mo., 472.)

VIII. A carrier of goods or cattle is only bound to carry in a reasonable time under ordinary circumstances, and is not bound to use extraordinary efforts, or incur extra expense in order to surmount obstructions caused by the act of God ; as a fall of snow. (Bradden vs. Great Northern Rly., 28 L. J., 51 ; 2 L. T., 94 ; Redf. Car., § 305.)

*Shanklin, Low & McDougal,* for Respondent.

I. After receiving the hogs mentioned in the first count of plaintiff's petition, and agreeing to ship them, the defendant was absolutely bound to carry out the contract or respond in damages for a breach thereof. The matters of ex-

cuse pleaded in the answer constituted no defense. The act of God or the public enemy will excuse the performance of a duty imposed by law, but not an obligation growing out of a voluntary contract. Events, against which the parties could have provided in their contract, cannot be set up as an excuse for the non-performance of that contract. (Collier vs. Swinney, 16 Mo., 484; Taylor vs. St. Bt. Robert Campbell, 20 Mo., 254; Hand vs. Baynes, 4 Whart., 214; Harmony vs. Bingham, 1 Duer., 209; Davis' Adm'r vs. Smith, 15 Mo., 467; School Dist. vs. Danchy, 25 Conn., 530; Ang. Carr., § 294; 2 Redf. Railw., 162; Add. Torts [1 Am. ed.], 991, 992.)

II. It was no excuse that the delay was occasioned by an unusual accumulation of freight along the line of defendant's road. (Faulkner vs. South Pacific R. Co., 51 Mo., 311; Tucker vs. Pac. R. Co., 50 Mo., 386; Denning vs. G. T. R. Co., 48 N. H., 455; 2 Am. Rep., 267; 2 Redf. Am. Railw. Cas., 393; Han. & St. Jo. R. R. Co. vs. Swift, 12 Wall., 262.)

III. If it was true that the government was making large demands on the company for the transportation of military supplies and troops, the defendant would have been justified in refusing to receive freight offered in excess of the capacity of its rolling stock, but was no excuse for not forwarding that received. (Ill. Cent. R. R. Co. vs. Cobb, 64 Ill., 128; Ill. Cent. R. R. Co. vs. McClelland, 54 Ill., 58; Porcher vs. Northeastern R. R. Co., 14 Rich. [S. C.] Law, 181; Patterson vs. North Carolina R. R. Co., 64 N. C., 147.)

IV. The station agent was clothed with the powers usually conferred upon station agents, or at least, if his powers were limited, the company kept the fact a profound secret. (Denning vs. Grand Trunk R. R. Co., *supra;* Watson vs. Memphis & C. R. R. Co., 1 Cent. L. J., 358, Supreme Court of Tenn., not yet reported; 2 Redf. Railw., 4 ed., 127, § 182.)

V. The act of God which will excuse in such a case must be the sole cause of the injury; if negligence of the carrier contributes to the injury he is liable. (Wolf vs. Am. Ex. Co.,

43 Mo., 491; Armentrout vs. St. L., K. C. & N. R. R. Co., 3 Cent. L. J., 235 ; Read vs. Same. 60 Mo., 199 ; Mich. Cent. R. C. vs. Curtis, 8 Chicago Leg. News, 228 ; Condict vs. Grand Trunk R. R. Co., 54 N. Y., 500 ; Seigel vs. Eisen, 41 Cal., 109.)

NAPTON, Judge, delivered the opinion of the court.

This was an action for damages alleged to have been occasioned by the defendant's negligence and breach of contract and failure of duty as a common carrier.

The evidence of the plaintiff tended to establish the following facts: The plaintiff's son, as agent for his father, applied to the station agent of defendant at Hamilton, some time prior to the 1st of December, 1863, for transportation of about three hundred live hogs, and the agent agreed with or promised the plaintiff's son, that the hogs should be transported to Macon between the 1st and 10th days of December. The hogs were driven to the station, and on the 1st of December placed in the stock pens of the company. None of the hogs were shipped until about the 25th of December, and in the meantime about fifty head died in the pens by exposure to a snow storm, which occurred about the middle of the month, and for want of shelter, and about one-third of the hogs were killed by the plaintiff and shipped on coal cars, and by deterioration, consequent upon this mode of transportation, brought one-half of the market price. The expenses attending the delay, by feeding, cost of hands, etc., are stated in the evidence ; but need not be detailed here, as no question arises in regard to such matters.

About the 12th of December, 1863, a second contract was made with the agent at Hamilton for the transportation of about eight hundred hogs on the 14th or 15th of December. This second lot of hogs was driven to within about ten miles of the station on the 14th or thereabouts, when the agent of defendant sent word to the plaintiff not to bring them in, as they were crowded and could not ship them for a while. These hogs were kept in the neighborhood, shifting around

to procure corn, till the 1st of February, 1864, upon assurances by the station agent, from time to time, that they would soon be able to transport them, until the plaintiff finally drove them on foot to Macon, a distance of one hundred miles, which occupied about fifteen days, thus arriving at Macon about the 15th of February.

There was proof of a loss of about one hundred and fifty hogs of the second lot, during this interval from the 20th of December to the 15th of February. The expenses incurred were also in proof. The loss of these hogs was occasioned partly by cold during the storm of snow in January, and piling, and partly from the usual accidents in driving, and by shrinkage, etc.

The petition charges not only negligence, but favoritism to other parties, and that the hogs of plaintiff were not taken in regular turn from the depot in their order of priority.

The defense relied on in the answer, and also in the testimony, was : 1. the unusual influx of freight along this road in the winter of 1863–4, especially of hogs, and the inability to furnish rolling stock sufficient to take all the hogs offered in a reasonable time ; 2. the demands of United States government for transportation of military supplies and soldiers, and, 3. the remarkable and unprecedented snow storm which occurred this season ; and nearly all the evidence of defendant is directed to these points. It does not appear, however, that the snow storm of the 15th of December stopped the passage of trains, but that the storm of the 31st December did stop the trains for from ten to fifteen days.

I ought to add, in regard to the defenses, that the plea of the statute of limitations was also interposed to bar a recovery.

The jury on the instructions found for the plaintiff, and assessed his damages on the first and second counts (which referred to the two lots of hogs heretofore mentioned) at $7,500. A remittitur was however entered for $2,000, and the verdict then stood at $5,500, and the court then refused to set it aside.

The following instructions were given for the plaintiff:

1. It was the duty of defendant to receive all live stock which was offered at Hamilton during the months of November and December, 1863, and to take, transport and deliver the same without unnecessary delay, according to contract.

2. If the jury believe from the evidence, that at any time within five years next before the 14th day of March, 1868, plaintiff offered for shipment at Hamilton, Missouri, a lot of live hogs, and that defendant's station agent at Hamilton accepted said hogs into the pens of defendant at Hamilton, for shipment, then no lack of rolling stock for shipping said hogs, nor the fact that the rolling stock was used by order of the military authorities of the United States, will amount to a sufficient excuse for failing to ship said hogs without unnecessary delay; and in that case, if the jury shall further find, that defendant failed to ship the hogs so received into said pens without delay, then the jury will find for plaintiff on the first count of the petition, unless the jury shall further believe from the evidence, that the defendant was prevented from shipping said hogs within a reasonable time solely by reason of a storm of snow and wind of unusual severity.

3. If the jury believe from the evidence, that in the month of December, 1863, E. T. Pruitt, acting for plaintiff, and defendant, by its station agent, E. N. Sleeper, made a verbal agreement, by the terms of which plaintiff was to deliver for shipment at Hamilton, Missouri, within three days thereafter, eight hundred hogs; and that said Sleeper was to accept and ship said hogs upon their receipt; and that said Sleeper refused to accept and ship said hogs, and notified plaintiff not to deliver said hogs; then the jury will find for the plaintiff in the second count of the petition.

4. If the jury find for the plaintiff on the first count of the petition, they will assess the damages at such amount as they may believe from the evidence resulted to plaintiff directly from defendant's failure to ship the hogs mentioned in said first count, not exceeding $4,000.

5. If the jury find for the plaintiff on the second count of the petition, they will assess his damages at such amount as they may believe from the evidence resulted to plaintiff directly from the failure of defendant to accept and ship the hogs mentioned in said count, not exceeding $10,000.

6. The jury are instructed, that, as common carriers, it was the duty of the defendant to so distribute its rolling stock among the various stations on its road, as to afford a fair and reasonable proportion of such rolling stock to shippers at each station, regard being had to the usual amount of freight offered at such station for shipment; and if the jury believe from the evidence, that unjust discrimination was made against shippers at Hamilton Station in this regard, and that such discrimination resulted in the damage to plaintiff complained of, they must find for plaintiff, even though there was no contract on the part of the defendant to ship plaintiff's hogs in proof.

7. If the jury find for the plaintiff, in estimating his damages they will allow him such damages as may fairly and reasonably be considered as arising naturally—that is, according to the natural course of things—from the breach of defendant's contract or duty, and which did from such breach; and if by reason of defendant's negligence or breach of duty, the property was deteriorated and reduced in value by storm, frost or any destructive agency of ordinary occurrence, the plaintiff is entitled to recover all the damages he has sustained thereby, not exceeding the sum of fourteen thousand dollars.

8. The jury must find separately on each count in plaintiff's petition, and if they find for plaintiff on the first count, the verdict may be in the following form: We, the jury, find for the plaintiff on the second count in his petition and assess his damages at ——— dollars.

And if the jury find for plaintiff on the second count their verdict may be in the following form: We, the jury, find for plaintiff on the second count in his petition and assess his damages at ——— dollars.

9. If the jury find for plaintiff, they may allow him interest on the damages found, at any rate not exceeding six per cent., from the date at which such damages accrued to and were sustained by him.

The following instructions asked by the defendant were given by the court:

2. The jury are instructed as to damages, in case they find for plaintiff on either the first or second count of plaintiff's petition, that if they believe from the evidence, that said hogs, or any of them, died from freezing, or the effects of excessive cold weather, or were smothered by piling together in consequence of such cold weather, or died from the want of proper care on the part of the plaintiff, or the person having them in charge, they will not include the value of such hogs in their assessment of damages.

3. The jury are instructed as to damages, in case they find for plaintiff on either the first or second count of plaintiff's petition, that if they believe from the evidence, that the loss from shrinkage in weight of said hogs, or any of them, was occasioned by insufficient feeding or want of proper care on the part of plaintiff, or the person having charge of them, or solely by the effect of excessive cold weather, they will not include any such loss in their assessment of damages.

10. If the jury believe from the evidence, that the failure of the defendant to ship plaintiff's hogs, mentioned in the first count of his petition, was in consequence of an unusual fall of snow, which filled the cuts along defendant's road and rendered it impassable, or that in consequence of unusually cold weather and great depth of snow, defendant's engines were frozen up and rendered useless for shipping purposes, they will find for defendant, provided they believe from the evidence, that defendant was diligent and used all ordinary means to overcome such obstacles, and shipped said hogs as soon as its road was passable, in their proper turn or order, at the station where said hogs were received.

The following instructions asked by defendant were refused :

1. The jury is instructed, that there is no evidence before them which is sufficient in law, if true, to warrant them in finding a verdict for plaintiff on either the first or second count in plaintiff's petition founded on a supposed special contract.

4. The jury are instructed that, if they believe from the evidence that previous to the month of November, 1863, the defendant had furnished and had on said road sufficient accommodation and rolling stock for the transportation of all freight and live stock that was ordinarily and generally offered for transportation on its said road within a reasonable time after the same were offered, and that during said months of November and December, 1863 and January, 1864, the defendant kept all of its available accommodation and rolling stock employed with reasonable diligence in receiving and for transporting the freight and live stock that were offered for transportation on said road, and that during said months of November, December and January, there was an unusual influx of business and an extraordinary press of freight and live stock for transportation on the road beyond the capacity of the road and all accommodation and rolling stock to receive and transport immediately and at once ; and that while the said hogs of plaintiff were waiting to be received in turn after they were offered for transportation in the order of time and priority in which they were so offered, there occurred along the line of said road a severe and unusual snow storm and great cold, obstructing the operation of said road, hindering it from thereafterwards receiving and transporting said hogs of the plaintiff in the order of time and priority in which they were offered for transportation, then defendant is not liable on the ground and for the reason merely that the plaintiff's hogs were not received and transported in the exact order of time and priority in which they were offered, in view of the operations and business of the whole road at all stations, junctions and shipping places there.

5. Should the jury believe from the evidence, that defendant, through its agent, Sleeper, contracted with plaintiff to

ship the hogs mentioned in the second count of the petition by or on the 14th day of December, 1863, yet, if the jury further believe from the evidence, that defendant was prevented from doing so by reason of an unusual influx and press of freight and live stock for transportation on the road beyond the capacity of the road, and all accommodations and rolling stock of said road, and also, by the occurrence, along the line of said road, of a severe and unusual snow storm, and great cold, obstructing the operations of said road and hindering it from receiving and transporting said hogs of plaintiff according to such contract, then defendant is not liable on the ground and for the reason that plaintiff's hogs were not received and shipped at the time called for by such contract, and the jury will find for the defendant.

6. If the jury believe from the evidence, that defendant was prevented from receiving and shipping the hogs of plaintiff mentioned in the first count of the petition by an unusual influx and an unusual press of freight and live stock and United States troops, horses and mules, forage stores and provisions for transportation, beyond the capacity of the road, and all accommodations and rolling stock on said road, and, also, by the occurrence, along the line of said road, of a severe and unusual snow storm and great cold, obstructing the operation of said road and hindering it from receiving and transporting said hogs of plaintiff, then defendant is not liable on the first count in the petition, and the jury will find for the defendant.

7. If the jury believe that more than five years elapsed between the 14th day of December, 1863, and the 27th day of February, 1873, the time of the filing of plaintiff's amended petition. the jury will find for the defendant on the second count of the second amended petition.

8. If the jury believe from the evidence, that the cause of action stated in the second count of plaintiff's petition accrued to plaintiff more than five years before the filing of plaintiff's amended petition, which was filed February 27th, 1873, they will find for defendant.

9. If the jury believe from the evidence, that, after the contract by the defendant's agent at Hamilton to ship the hogs mentioned in plaintiff's second count (in his petition), and before the delivery of said hogs by plaintiff to defendant, there was an unusual influx of freight caused by the United States government shipping over defendant's road large quantities of military stores and troops, which monopolized defendant's rolling stock, engines, cars, and means of transportation, or that there was an unusual influx of freight from other sources actually delivered to defendant for shipment to the extent that rendered defendant unable to receive and ship plaintiff's hogs mentioned in said second count, then defendant had a right to refuse to receive plaintiff's hogs, and defendant is not liable under said second count, provided notice of defendant's inability to receive and ship said hogs was given to plaintiff before he had gone to any expense on the strength of said contract.

11. If the jury find for plaintiff, in assessing damages they will not include any amount for hogs that were frozen to death, or smothered to death by being overlaid by other hogs.

The first two instructions are not seriously objected to, and it is difficult to see any ground upon which objections could be raised. They relate to the first delivery of hogs in the pens of the defendant, and merely require that they shall be forwarded without unnecessary delay. They further assert, that the lack of rolling stock, and its subjection by the charter to the preferred claims of the government, constituted no excuse for the detention, but concede, that the defendant is not responsible for any delay occasioned by a snow storm and unusual wind. These instructions are certainly more favorable to the defendant than the evidence justified, since there was evidence of an express contract made by the agent, that the hogs should be forwarded by the 10th of December, and there was no proof of any unusual snow storm or wind previous to this date, and if there had been, it should at least have been stated in the instruction, that the storm

and wind were of such a character as to stop the running of the trains.

The instruction was, we think, right in leaving out of view the insufficiency of the defendant's rolling stock, and its preoccupation by the United States military authorities. The reception of the hogs in the pens of the company (omitting all consideration of the promise or contract of the station agent) was equivalent to an obligation to forward without unnecessary delay. If the government monopolized the road, the company should have abdicated its functions as a common carrier for the public at large. But the agent is presumed to have been acquainted with the condition of the rolling stock, and the ability of the company to forward the freight received in at least a reasonable time, barring inevitable accidents from obstructions to the road by storms, etc. The company is also supposed to be acquainted with the prior claims of the government, and it was its duty, as a common carrier, to provide for the accommodation of private citizens as well as the government. The civil war had been, at the date of these contracts, in December, 1863, and January, 1864, in progress for upwards of two years, and the defendant must be presumed by this time to have ascertained to a reasonable extent the probable claims of the government on its road for transportation, and to have made provision for such demands without interfering with the ordinary business of the road. And the same may be said of the alleged increase in the crop of hogs in the vicinity of the road, a matter of which companies engaged in the business of transportation are not likely to be ignorant.

Indeed, it may be observed, without undertaking to give even the substance of the evidence on this subject, that it was of the most indefinite character, giving no statistics, no facts, but merely general statements of a great increase of the hog crop in the country tributary to this road, and a great increase in this branch of the business of the road, which, together with the severity of the winter, were claimed to absolve the company from its obligations as a common carrier.

If such generalities as these are allowed to absolve railroad companies from all their duties to the public, either arising from contract, or implied by the law, the law in regard to the duties of common carriers, sanctioned, as it has been, by centuries of experience, would afford a mere illusory protection to the public who deal with transportation companies.

With regard to the third instruction, which is based on the hypothesis of a contract between the plaintiff and the station agent, it is urged here, that such agents have no power to make such contracts. The general understanding of the country undoubtedly is, that such agents are placed there for the express purpose of receiving and forwarding freight, and making such contracts in reference thereto as they are authorized by the company to make.

The fact that, in a particular instance, the agent exceeds his authority by making engagements, which his principal's instructions forbid, is certainly a matter of which the public cannot take notice, unless conveyed to the public in such a manner as would authorize the inference that shippers are apprised of the restrictions. It is difficult to see how the business of a railroad could be successfully conducted, in regard especially to live stock, unless the owners have a right to rely on the representations of the station agents as to the time in which to deliver their stock. It is convenient to both parties that such power should be given to the agents, as stock dealers would be placed in a position which might subject them to unnecessary expense, if not informed, at least within a reasonable time, of the day when it will be convenient for the railroad to transport the stock. Such engagements, like all other engagements, may be excused from literal performance, undoubtedly, if unforeseen occurrences, such as the law recognizes as sufficient, should occasion slight delays. (Derring vs. Grand Trunk R. R. Co., 48 N. H., 455; 2 Redf. Railr., 113; 18 Eng. Law & Eq. R., 557; Sto. Ag., §§ 443, 127; 42 N. H., 125; 47 Id., 554.)

The third instruction, which was in reference to the second drove of hogs, in number about 800, was not framed in con-

formity to the proofs, although as an abstract proposition it was sufficiently correct. At least the defendant has no reason to complain of it. There was no evidence that the station agent positively refused to accept the hogs, but that he advised the plaintiff to keep the drove where it then was in the neighborhood of Hamilton, intimating that he would soon be able to forward them. Had there been a peremptory and unconditional refusal, the plaintiff might have immediately done what he had ultimately to do, to-wit, drive his hogs on foot to Macon City. But, at repeated interviews with the agent, the hope was held out, that the press of business would soon be over, and that the hogs would soon be forwarded, thus occasioning a delay of the plaintiff, in that neighborhood, from the 20th of December to the first of February, a period of 41 days.

There is no question of the propriety of the fourth, fifth and seventh instructions for the plaintiff. These instructions were, however, subsequently qualified or explained by the second and third instructions given for the defendant, which excluded from the consideration of the jury any estimate in their damages of the hogs that died from freezing, or the effects of excessive cold weather, or from piling or smothering in consequence of the cold weather.

It is probable from the course of the plaintiff in entering a remittitur for $2,000, which was about the value of the hogs proved to have died from these causes, that the jury disregarded these instructions for the defendant, and in their damages included their value; but as the remittitur removed any objections on this score, the defendant has no cause of complaint.

We would not be understood, however, as concurring altogether in the views of the circuit court, as indicated in these instructions for the defendant, although they have the sanction of very respectable authorities. It is not deemed necessary, or appropriate to the position of the present case, seeing that the circuit court adopted the views most favorable to the defendant, that the subject of proximate and remote damage

or damages, which the negligence of the defendant, concurring with the "act of God" produces, should be investigated or determined. It may be well, however, to observe that the latest decisions of this court (Wolf vs. Am. Exp. Co., 43 Mo., 421, and Reed vs. St. Louis, K. C. & N. R. R. Co., 60 Mo., 199) evidently incline to the position adopted by the courts of New York, and adhered to by the courts of that State in repeated cases, notwithstanding the decisions in Pennsylvania and Massachusetts in Morrison vs. Dam (20 Pa., 171), and Denny vs. N. Y. Cent. R. R. (13 Gray, 481), and the subsequent decision of R. R. Co. vs. Reeves, made by the Supreme Court of the United States in 10 Wallace, 176. The commission of appeals in New York, in 1873, in view of all decisions to the contrary, including these I have just referred to, upon a re-examination of the subject, adhere to their former opinions in Michaels vs. N. Y. Cent. R. R. (30 N. Y., 564), and Read vs. Spalding (30 N. Y., 630), and Bailwick vs. Balt. & Ohio R. R. (45 N. Y., 712). In all these cases in New York it is held, that where the negligence concurs in and contributes to the injury, the defendant is not exempt from liability on the ground that the immediate damage is occasioned by the act of God or inevitable accident.

The case of Clark vs. Pacific R. R. Co. (39 Mo., 184) is not inconsistent with the views expressed in the later cases in this court I have referred to. There Judge Holmes observed, that "though the act of God, or of the public enemies, be in itself a good defense, yet, if the loss be directly brought about by reason of the negligence or want of proper care of the party himself, it would not excuse him. In such case the negligence or want of reasonable care and foresight might be deemed the proximate cause of the loss. And if it had been made to appear that the conductor knew of the immediate presence of the hostile forces, and had reason to believe that his train could go safely through on that day, but that there was danger that the train would be attacked and destroyed on the next day, and that he had for that reason left the plaintiff's goods behind and taken other goods instead to

make sure of their safety, and then, without reasonable care and foresight, proceeded with the plaintiff's goods on the next day in the face of the impending danger, there might have been some ground on which the defendant could have been held liable." (p. 191.)

The general doctrine on this subject of damages is undoubtedly correctly stated in the instructions given for the plaintiff, that damages in such cases can only be such as may fairly be supposed to enter into contemplation of the parties when a contract is made, or a duty assumed, and such as might naturally be expected to follow its violation. In other words, the damages must be such as are foreseen, or might be foreseen, as likely to result from a breach of the contract or obligation assumed or implied.

It appears strange, that a violent snow storm, or excessive cold weather, should be regarded as extraordinary events in the latitude of this road in North Missouri, during the months of December or January. I should rather suppose, that the absence of such storms during these winter months would be out of the range of ordinary experience. Of course, such storms, when of sufficient violence or duration to obstruct the passage of trains, must be allowed, as the circuit court in this case allowed, to excuse delays during the continuance of such obstructions. Whether the detention of two or three hundred hogs in uncovered pens for twenty-five days, during the month of December, might not ordinarily and reasonably be expected to result in considerable loss from exposure and smothering, is a question, I think, which might have been left to the jury. The second and third instructions for the defendant excluded all losses of this character from their consideration.

Most, if not all, of the cases in New York and in this State, where the carrier has been held responsible for damages resulting from negligence in exposing the property to unforeseen accidents, are cases in which the property has been actually received on the trains, and bills of lading given. But in Denning vs. Grand Trunk R. R. Co. (48 N. H., 455) that

was not the case, and the goods were merely delivered to the agent at the depot, under a promise that they should be forwarded immediately, but were never forwarded at all ; and, yet, the court held the carrier responsible for all the damages that resulted from this delay. It is difficult to distinguish that case from the present, so far as the loss of the fifty hogs in the pens at the depot of defendant is concerned.

Upon the whole, we think the instructions in this case were sufficiently favorable to the defendant. In truth the delay of twenty-five days in relation to the first drove of hogs, and of forty-one days in regard to the second, to say nothing of the fifteen days consumed in driving to Macon City, might be termed *prima facie* negligence, inexcusable unless by the total cessation of all business by the company for the public. There were at least fifteen days in the early part of December when no obstruction appears, so far as the evidence is concerned ; and deducting the ten or fifteen days in January, during which the road was blocked by snow, there were still from the 20th December to the 1st of February twenty-six days in which the defendant was engaged in transportation.

It is unnecessary to notice the question of the statute of limitations, because the record does not contain the original petition, and there is nothing to show that the amendment embraced a new cause of action.

Judgment affirmed. All the other judges concur, except Judge Vories, who is absent.