JAMES ARMSTRONG, Respondent, *v.* THE MISSOURI PACIFIC RY. Co., Appellant.

April 13, 885.

1. INSTRUCTIONS—MUST BE CONSTRUED ACCORDING TO THEIR APPARENT MEANING WITH REFERENCE TO THE ISSUES AND CIRCUMSTANCES OF THE TRIAL.—An instruction hypothecating an agreement for shipment of cattle and hogs; a delivery of them at the time and place of shipment; and an averment of failure, detention and delay of

part of defendant, and consequent shrinkage in weight, and expenses for feeding and caring for stock during delay; and a further averment of loss in market price or value at place of consignment because of the delay; and fixing the measure of damages as the expense incurred in feeding and caring for said live stock during the detention over and above the expense of keeping them at home; and also any additional loss by shrinkage in weight because of delay, as well as difference or loss in market price because of said delay; *held* to be consistent with the former rulings of the Supreme Court of this state, as laid down in *Glasscock* v. *C. & A. R. R. Co.* (69 Mo. 591); and *Sturgeon* v. *St. L., K. C. & N. Ry. Co.* (65 Mo. 570).

2. DAMAGES—MEASURE OF—WHAT SHOULD CONTROL IN ESTIMATING.—
Only such damage as might be reasonable considered as within the contemplation of the parties as likely to happen, in case there was a failure to comply strictly with its terms, should be given. It is not required to state specifically in the pleadings the details which make up the constitutive facts.

APPEAL from Cass County Circuit Court, HON. NOAH M. GIVAN, Judge.

*Affirmed.*

The facts sufficiently appear in the opinion of the court.

RAILEY & BURNEY, for the appellant.

I. The second count of petition was abandoned at the trial and no evidence introduced thereon.

II. The measure of damages "was the difference between the market value of the cattle when they did arrive, and when they *should have* arrived at their destination, and the difference between the actual and usual shrinkage of the cattle."—*Glasscock* v. *C. & A. R. R. Co.*, 69 Mo. 591; citing *Sturgeon* v. *R. R. Co.*, 65 Mo. 570. There is no evidence in this case showing the market value in East St. Louis at either time. The court erred in admitting improper evidence, in giving instruction for plaintiffs, and in refusing to set aside verdict.

III. This action being for breach of contract the damage allowed should be such alone as may be fairly considered as having been in the contemplation of the parties at the time the agreement was entered into. This rule was disregarded by the court and incompetent evidence admitted

calculated to mislead the jury.—*Ballentine* v. *R. R. Co.*, 40 Mo. 505; Sedgwick's Meas. Dam., 63 (3d ed.); 2 Greenl. Evid., sect. 256; *Clark* v. *R. R.*, 39 Mo. 184.

IV. The action was for failure to furnish *cars*. The evidence was for failure to furnish *lots*. The pleadings did not warrant the admission of such evidence and the jury were misled thereby. The plaintiff cannot sue upon one cause of action and recover upon another.— *Waldheim* v. *H. & St. Jo. R. R.*, 71 Mo. 514; *Edens* v. *Same*, 72 Mo. 213; *Bullene* v. *Smith*, 73 Mo. 162; *Weil* v. *Posten*, 77 Mo. 287; *State ex rel. Griggs* v. *Edwards*, 78 Mo. 476; *Ely* v. *R. R. Co.*, 77 Mo. 343.

C. W. Sloan and Comingo & Sloan, for repondents.

I. The court did not err in permitting evidence showing the condition of the stock pens of defendant caused by the weather. If defendant had complied with its contract there would have been no delay; in violating it, it is bound for all consequent damages.—*Harrison* v. *R. R. Co.*, 74 Mo. 364; *Pruitt* v. *H. & St. Jo. R. R. Co.*, 62 Mo. 527; Hutchis. on Carriers, sect. 317; *Reed* v. *R. R. Co.*, 60 Mo. 199; Angell on Carriers, sect. 294; *Bailwick* v. *R. R. Co.*, 45 N. Y. 712.

II. There was no error in giving the instruction in behalf of plaintiff. The whole instruction, taken together, is plain enough, and the jury could not have been misled. —*Sturgeon* v. *R. R. Co.*, 65 Mo. 570; *Glasscock* v. *C. & A. R. R.*, 69 Mo. 597; *Pruitt* v. *R. R.*, 62 Mo. 527.

III. The evidence introduced was admissible under the allegations in petition. If the damages claimed in this case were such as necessarily resulted from a breach of defendant's contract a less particular statement is sufficient. The main purpose is to advise the defendant in such cases sufficiently as to the charge he has to meet. As the defendant must know in what respect he has or has not performed his contract, any great particularity, it should seem, ought not, on principle, to be required.— Chitty on Pleading, vol. 1, 333, 338 and 397; *Barruso* v. *Muden*, 2 John. (N. Y.), 149; *Moore* v. *Mountcastle*, 72 Mo. 605; *Clemens* v. *H. & St. Jo. R. R. Co.*, 53 Mo. 366.

IV. The *gist* of the action is for loss by decline in the market price, and extra shrinkage, in weight, because of the delay. The whole question resolves itself into the one of the degree of shrinkage, because of the condition of the stock pens. Facts only should be pleaded—not evidence. Here the facts constituting the cause of action are stated.

Opinion by Ellison, J.

This action arose on the following petition, omitting the formal parts and the second count, which was abandoned:

"That on the day and year aforesaid, plaintiff was the owner of certain live stock, to wit: seventy-seven head of hogs, sixty-one head of cattle, then being on plaintiff's farm at the distance of about eight miles from said town of Archie, which said live stock plaintiff was desirous of shipping to said city of East St. Louis for sale. That on the day and year first aforesaid, defendant, by its agent at said town of Archie, promised and agreed to furnish plaintiff, on the 19th day of December, 1881, four railroad cars for the transportation and shipment of said live stock from said town of Archie to said city of East St. Louis, and further promised and agreed, unconditionally, on said day and year first aforesaid, to ship for plaintiff said live stock from said town of Archie to said city of East St. Louis, with reasonable dispatch, in four cars to be furnished by defendant for that purpose on said 19th day of December, 1881; in consideration of which agreement on defendant's part, plaintiff agreed to pay defendant for delivery of said stock in said city of East St. Louis, the sum of.............dollars freight. That in pursuance of said agreement so made and entered into as aforesaid, and relying on defendant to perform the same on its part, said plaintiff did, on the 18th day of December, 1881, drive from his said farm said hogs, and deliver the same to defendant in its stock pens at said town of Archie, and did, on the 19th day of December, 1881, drive from his said farm said cattle and deliver the same to said de-

fendant in its stock pens in said town of Archie, all
of which was done in time for shipment of said stock on
said 19th day of December. That defendant wholly failed
and neglected to keep and perform its said agreement in
this; that defendant failed to furnish plaintiff, on said
19th day of December, said cars, or to furnish any trans-
portation for the shipment of plaintiff's said live stock,
and failed to ship the same from said town of Archie on
the day last aforesaid, as it had agreed to do; that said
defendant failed and neglected to furnish plaintiff any
cars or transportation for said cattle and hogs, until the
21st day of December, 1881, at which time said live stock
was shipped by defendant from said town of Archie to
said city of East St. Louis. That in consequence of the
failure of defendant to furnish cars for shipment of said
cattle and hogs, and to ship the same until said 21st of
December, said hogs and cattle failed to reach or arrive
at said city of East St. Louis until the 23d Day of Decem-
ber, 1881, when in fact, had the same been shipped on the
19th day of December aforesaid, they would have reached
East St. Louis on the 21st of December following; that
by reason of the delay in the shipment of said live stock,
plaintiff was compelled to, and did pay out, the sum of
seventy dollars for feed and caring for said live stock,
whilst detained at said town of Archie; and said plaintiff
further suffered great loss and damage by reason of the
shrinkage in the weight of said cattle and hogs occasioned
by the delay in the shipment of the same aforesaid. That
the market value of said hogs and cattle in said city of
East St. Louis on the 21st day of December was much
greater than on the 23d day of December following:
that the difference in the market value of said cattle and
hogs between said 21st and 23d days of December, 1881,
was six hundred dollars, owing to the continued and
steady decline in the market value in cattle and hogs,
from said 21st day of December up to and until said 23d
day of December; and that in consequence plaintiff was
compelled to, and did, on said 23d of December, sell his
said cattle and hogs on arrival at the said city of East St.

Louis at great sacrifice and loss.   That on said 23d day
of December, 1881, the general market value of cattle and
hogs in said City of East St. Louis was greatly depressed,
and had greatly declined, as compared with the market
price of such property on 21st of December aforesaid.
That by reason of all the premises said plaintiff says he
has sustained damages in the sum of eight hundred dol-
lars, for which he asks judgments against said defend-
ant.''

On trial the court gave the following instructions for
plaintiff:

If the jury believe from the evidence that defendant,
by its agent, agreed to furnish plaintiff four cars, Decem-
ber 19th, 1881, for the shipment of the cattle and hogs
mentioned in the petition, from the town of Archie, Mo.,
to East St. Louis, Ill. ; that said stock belonged to plain-
tiff ; that in pursuance of such agreement, and relying
thereon, plaintiff delivered said live stock at said town of
Archie on the day aforesaid, and that defendant failed
to furnish said cars on that day for shipment of said cattle
and hogs, and that in consequence of such failure on de-
fendant's part, said cattle and hogs were detained and
delayed at said town of Archie until December 21, 1881,
awaiting shipment, and were not in fact by defendant
shipped until said last named date, and that said live
stock did not arrive at said East St. Louis until December
23d, 1881 ; and further, that in consequence of such delay
in transporting said live stock there was shrinkage in the
weight thereof ; that if said live stock had been shipped
December 19th, 1881, from said Archie, they would
reasonably have reached said East St. Louis December
21st following ; that the market value of said live stock,
or any thereof, was less in said East St. Lous December
23d, 1881, than on December 21st aforesaid ; then the jury
may find for plaintiff on the first count in petition such
damages as they may believe from the evidence plaintiff
has sustained.   And the jury are instructed that the
measure of such damages is any expense plaintiff may
have necessarily incurred in feeding and caring for said

live stock while detained at Archie, over and above the expense of keeping them at home; and also any additional loss by shrinkage of said live stock, caused by the delay in shipping the same, as well as any difference or loss in the market price of said live stock in said East St. Louis between the 21st of December and 23d of December, 1881.

To the opinion of the court in giving said instruction, the defendant at the time excepted.

The following selections from the evidence will be sufficient to explain the points of objection and exception made by defendant:

Said plaintiff thereupon introduced testimony tending to show that on the 15th day of December, 1881, he made a verbal contract with the agent of defendant at Archie, Mo., to furnish plaintiff four cars without fail Monday, December 19th, 1881, in time to ship said stock on the 3 o'clock train on said day; that said cars were not furnished, and said stock not shipped till 3 o'clock on Wednesday, December 21st, 1881, from Archie to East St. Louis.

Thereupon said plaintiff was sworn as a witness in his own behalf, and testified substantially as follows: I was the owner of the stock heretofore mentioned. The stock were fed on my farm 8½ miles west of Archie. The hogs were taken from my farm Sunday evening, December 18th, and the cattle were taken Monday morning, December 19th, 1881, and placed in the defendant's stock yards and pens at Archie, Mo. It commenced raining on Monday morning, after I started from home, and it continued to be rainy and muddy all the time the stock were at Archie, till Wednesday evening. Stock was not shipped till 3 o'clock Wednesday, December 21st, 1881. They remained in the stock pens of defendant at Archie about 48 hours. I fed the hogs about 24 bushels of shelled corn, worth 85 or 90 cents per bushel. I fed the cattle 50 bushels of corn, at 80 cents or $1 per bushel; also one ton of timothy hay, worth $13. My expenses for feeding stock and for care of same during

the delay at Archie, were $70. Did not feed the cattle hay at home. Fed them about twenty bushels of corn per day there. Corn was worth 10 to 15 cents per bushel more at Archie than at my house. I weighed an average steer on Wednesday evening, December 19th, and found that it weighed 1100. Think the whole 61 head would have averaged 1100 pounds when they arrived at Archie on the 19th of Decmber. They averaged 943 pounds when sold in East St. Louis on the evening of December 23rd. I think the cattle shrank while at Archie, on account of the delay in shipment, 100 pounds per head. Cattle brought in East St. Louis $4.25 per hundred pounds. Witness then testified that hogs and cattle shrunk very materially because of the rainy weather, and because the pens were muddy and contained a great deal of water, so that they could not properly get their feed, and had no place to lie down. (All of which said last testimony was objected to by defendant as irrelevant and incompetent, and not a proper element of damage in this cause; which said objection was by the court overruled, and said evidence concerning the rain and mud aforesaid permitted to go to the jury; to the ruling of the court in admitting which, defendant at the time excepted.) I was in Archie while stock were there and had my hands look after and feed them as best they could till they were shipped. If the cattle and hogs had been shipped from Archie in the afternoon of December 19th, 1881, they would have reached East St. Louis December 19, 1881, A. M. That said hogs weighed, when sold, 16,140 pounds, and were sold at six cents per pound.

Testimony as to rain and mud was also admitted from other witnesses, against defendant's objection.

Defendant likewise objected without avail to witness Buel, a commission merchant of East St. Louis testifying that there was a fluctuation in the market between the 21st and 23rd of December by reason of which said plaintiff sustained a loss of 25cts. per hundred pounds on the cattle.

The defendant's criticism of the action of the court in ad-

mitting testimony and giving plaintiff's instruction is not well founded. The language used in the petition, the expression of the witnesses, and the language of the court in the instruction for plaintiff, referring to the difference in value of the stock on the 21st, when it should have arrived at East St. Louis, and on the 23rd, when it actually did arrive, taken in connection with the subject in hand, were only understood, and could only be understood in one way. When the petition states "that the market value of said hogs and cattle, in said city of East St. Louis, on the 21st day of December was much greater than on the 23rd day of December following ; that the difference in the market value of said hogs and cattle between said 21st and 23rd days of December, 1881, was six hundred dollars, owing to the continued and steady decline in the market value of hogs and cattle from said 21st day of December up to and until said 23rd day of December, and that in consequence " plaintiff sold at a sacrifice, etc., on the 23rd, as well as the expression used by the court in the instruction, and by the witnesses on the stand, would certainly not be construed by any one, as meaning the value on the 22nd, the day between the 21st and 23rd. However the plaintiff does make the point that these expressions do mean the 22nd, as that is the only time *between* the two other dates. And that as the true rule or measure of damage is the difference in the price at the time when the stock did arrive and when it should have arrived ; the petition was not good, the evidence not admissible and the instructions improper in stating the difference in value as "*between*" the time.

The true and very apparent meaning of these words and expressions is, that the value changed between the times, that is between the hour when the stock should have arrived and when it did arrive, and that it was in this changed condition at the time of its arrival. The difference in price had occurred between the times, and was at the hour of sale on the 23rd, as stated by the witnesses. We think the language of the petition, the court and the witnesses was all consistent with the rule as

laid down in *Glasscock* v. *The C. & A. Ry. Co.* (69 Mo. ·597); and *Sturgeon* v. *St. L., K. C. & N. Ry. Co.* (65 Mo. 570).

Plaintiff's next objection is, that the court admitted testimony as to the rain and the wet and muddy condition of the pen at Archie. It is very true that only such damage as might be reasonably considered as within the contemplation of the parties as likely to happen, in case there was a failure to comply strictly with its terms, should be given. We are of the opinion, however, that rain, especially at this season of the year, and the consequent muddy condition of the pens, was such a happening as might reasonably be expected to occur. The law in this respect is clearly settled and well defined; the only difficulty ever arising in that regard, is as to whether the given case falls within the rule. It could not be admitted for a moment that muddy railroad stock pens were an extraordinary matter in Missouri, in the month of December. If any difference, it is an event more likely to be than not, more reasonably expected, ·than unexpected.

We are of the opinion that the evidence objected to, was properly admitted under the petition. It is true the suit is not in terms for compelling plaintiff to put his stock in muddy pens; but is for plaintiff's failure to furnish cars and ship plaintiff's cattle as agreed; the muddy pens being an element of damage resulting directly from that failure. The petition is sufficiently explicit. If we should say it was not, it would be equivalent to declaring that nothing should be considered which was not especially named in the pleading. Such a rule has never received judicial sanction. None of defendant's objections are meritorious.

The other judges concurring, the judgment is affirmed.