JAMES T. GUINN, Respondent, v. WABASH, ST. LOUIS & PACIFIC RAILWAY CO., Appellant.

Kansas City Court of Appeals, January 25, 1886.

1. COMMON CARRIERS—OBLIGATIONS OF—EXCUSE FOR NOT FULFILLING. The obligation which the law imposes upon a common carrier of freight and live stock, to provide itself with all reasonable facilities and appliances for the transportation of such goods and stock as it holds itself out to the public as ready to engage in carrying when offered, is not met by the *excuse* of delay because of the disabling of a bridge on its line, so that it was forced to reach its destination by another route. It is the duty of the carrier when applied to for cars, to *advise* the shipper of the situation and circumstances which would likely occasion any unreasonable delay; and if he does not so advise, and obtain consent to it, either express or implied, he becomes bound to carry the goods within a reasonable time; and he will not be heard to say that his delay was caused by some contingency. And such unavoidable difficulty, though wholly unknown and unanticipated at the time of acceptance, will not excuse him.

2. CONTRACT FOR WORK ON SUNDAY ILLEGAL, BUT OBLIGATIONS MAY NEVERTHELESS ARISE.—Although it may be conceded that a contract, though entered into on a secular day, if for work or labor to be performed on Sunday, other than household offices of daily necessity, or charity, or other works of necessity, is illegal; yet, if one so far performs such a contract as that the law imposes upon him a duty as growing out of such performance; as, for instance, a carrier receiving stock into his pens on Sunday for transportation, although not bound by a contract agreeing to such receiving, he will be bound by his obligation, notwithstanding, the contract, except for this, might not be enforceable. And in such case, the *gist* of the action is the negligent delay in *shipping* and not in receiving.

APPEAL from Schuyler Circuit Court, HON. ANDREW ELLISON, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to recover damages against the defendant—a railroad corporation—for delay in shipping certain hogs, the property of plaintiff. The petition,

after making the usual averments as to defendant's office as a common carrier, alleged that the defendant was engaged as such carrier in transporting freight and live stock between its station at Lancaster, Missouri, and the city of Chicago, in Illinois ; that on or about the twenty-fifth day of November, 1881, plaintiff directed the agent of defendant at said station to furnish him with four cars in which to ship hogs to Chicago, Illinois, on the twenty-seventh day of that month, which cars, the defendant's agent in the regular line of his duty, agreed to furnish at that date.    " Plaintiff further states that on or about said twenty-seventh day of November, 1881, he delivered in defendant's stock pens at Lancaster, Missouri, four car loads of hogs, which were received by the agent of defendant in charge of its business at Lancaster, at that time, with directions that they would be shipped without unreasonable delay, to Chicago, Illinois ; that said defendant on said day, and for eight days thereafter, failed and refused to ship said hogs without unreasonable delay, but on the contrary said hogs were permitted to remain in the defendant's stock pens at Lancaster, Missouri, for an unreasonable time, to-wit : about eight days after they were delivered to defendant."

The petition then assigns as damages resulting from said detention a shrinkage in weight of 2,360 pounds, for which $141.90 damages are claimed ; a decline in the market value of ten per cent. at Chicago, amounting to $60.00 is claimed ; feeding the hogs in the pens while detained at Lancaster, $15.00 ; and a decrease in the marketable value of the hogs on account of shrinkage, $127.00 ; making in the aggregate $343.90.

The answer alleged that plaintiff notified the agent that he would want the cars on the twenty-ninth day of November, and that said "agent then informed plaintiff's agent that he would notify the proper officer of the defendant corporation of plaintiff's request, and accordingly did so inform said officer. That there were then other orders for stock cars in advance of plaintiff's, which had to be filled before plaintiff could be supplied.

"That on the fifth day of November, 1881, one span of the railway bridge across the Mississippi river at Keokuk, Iowa, was broken down by a passing steamboat, so that defendant could not cross its trains over said river there, and was thereby compelled to run them by a circuitous route over other lines of railway to another point on said river. That such breakage of said bridge caused an accumulation of freight on its line, and delayed the movement of its trains.

"That during the month of November, 1881, its track was washed out and overflowed by unprecedented floods of high water, which also embarrassed and hindered the movements of its trains.

"That it furnished plaintiff one stock car on the twenty-ninth of November, 1881, two cars on December 1, 1881, and one car on December 4, 1881, which was as soon as it could possibly do so, for the reasons above set forth, and which it averred were all the cars ordered by plaintiff for shipment of his live stock from Lancaster to Chicago, between the twenty-fifth of November and the fourth of December, 1881."

The reply tendered the general issue.

There was evidence tending to support the issues on either side. The plaintiff asked no instructions, the issues being submitted to the court sitting as a jury. On behalf of defendant the court gave the following declarations of law:

"4. That upon the pleadings and the evidence in this cause, plaintiff cannot recover any damages on account of any decline in the market value of the stock between the time plaintiff ordered cars at Lancaster, Missouri, and their arrival at Chicago."

"5. The jury are instructed as to damages, if they find for plaintiff, that if they believe from the evidence that the loss by shrinkage in weight of plaintiff's stock, or any of them, was occasioned by insufficient feeding or want of proper care and attention on the part of plaintiff or the persons having charge of them, or by the effect of wet, cold, or muddy weather, they will not include any such loss in their assessment of damages."

"6. The court instructs the jury that if they find from the evidence that plaintiff directed defendant's station agent at Lancaster, Missouri, to furnish plaintiff cars for the shipment of live stock from Lancaster, Missouri, to Chicago, on the —— day of ——, 1881, that it was the duty of defendant to furnish said cars on said day, or so soon thereafter as defendant could reasonably do so after first supplying previous demands of other shippers; and that in determining whether or not defendant was negligent in furnishing said cars, the jury must consider all the circumstances of the case. If they find that the bridge over the Mississippi river was down, and that defendant was compelled to run its trains over the lines of other railroad companies as irregular trains, and subject to the orders of such companies, and were thus embarrassed and delayed in the movement of their trains at the time plaintiff complains, then said delay offered a sufficient defence to plaintiff's action."

"7. The court instructs the jury that if they believe from the evidence that defendant's failure to furnish cars on the day demanded by plaintiff, was in consequence of the breakage in the railroad bridge at Keokuk, over which defendant crossed its trains, and that the falling of said bridge subjected the defendant to delays in moving its trains eastward and westward, they will find for the defendant, provided, they find it used ordinary diligence to furnish said cars as soon as it could reasonably do so in their proper turn or order. And plaintiff is entitled to no damages for delay until after a reasonable time has elapsed as set forth in the foregoing instructions."

"8. Defendant cannot be held liable for negligence in furnishing cars, if it were prevented from doing so by unavoidable accident, such as the breaking of a bridge by a steamer being thrown against it without defendant's fault, and defendant is excused from any delay caused by any such obstacle."

"9. If the jury find from the evidence that there was unreasonable delay in furnishing plaintiff's cars for the

shipment of his stock, considering all the circumstances of the case, then plaintiff can only recover what would then seem to be the natural and immediate consequence of such delay. These are the delays to which plaintiff was subjected, and the necessary expenses in feeding and taking care of the same, and this would not include any decline in market prices or shrinkage in the weight of plaintiff's stock, unless it appears from the evidence that these effects were caused directly from the act of defendant."

"10. The court instructs the jury, that it is the duty of a railroad company to distribute its cars among the different stations on its lines of road, in proportion to the business ordinarily done, so that all freight offered at different stations may be shipped without unreasonable delay, and no one station should be furnished with cars to the prejudice of another."

The court refused other instructions asked by defendant, which are too immaterial for attention.

The court found the issues for plaintiff, and assessed his damages at one hundred and seventy dollars. The defendant has brought the case here on appeal.

GEO. S. GROVER, for the appellant.

I. Defendant was not responsible for the decline in the market value of the animals, unless a special contract was entered into with plaintiff to transport the animals to Chicago, for arrival there at a specified time. *Richardson v. R. R.*, 21 N. W. Rep. 49; Hutchinson on Carriers, sect. 772, and cases cited.

II. The contract declared upon was illegal and void. It was to furnish cars for a shipment of live stock on defendant's road on a day which was Sunday. The labor contemplated was expressly prohibited by statute. Sect. 1578, Rev. Stat. In such cases, a court will not lend its aid to a party who founds his action on an illegal transaction. *Robeson v. French*, 12 Metcalf (Mass.) 25. 2 Parsons on Contracts (5 Ed.) 762; *Johnson v. Brown*, 13 Kansas 529; *DeForth v. R. R.*, 52 Wis. 320; *Bernard v. Lapping*, 32 Mo. 341.

III. The contract sued upon was not proved, and, therefore, defendant was entitled to a finding in its favor. The variance in proof between this and the cases of *Pruitt v. Ry.* (62 Mo. 527), and *Harrison v. Ry.* (74 Mo. 364), is marked, and is sufficient to distinguish this action from them.

IV. The court admitted improper testimony as to the decline in the Chicago market, and erred in refusing proper instructions asked by defendant, going to the whole case and correctly declaring the law. See cases cited under I and II, *supra*.

SHELTON & DYSART, for the respondent.

I. Conceding that defendant is not liable, under the pleadings, for damages resulting from decline in the market at Chicago, because there is no allegation that defendant knew the hogs were shipped on speculation to that market; still the petition shows a cause of action for damages on account of defendant's unreasonable delay. Defendant could not be injured by admission of evidence as to the decline in the market because the court excluded such evidence by instruction. Hutchinson on Carriers, sections 771, 772, and 759, as to the law applicable to this case.

II. The contract pleaded does not necessarily involve a violation of the Sunday law. The agreement was not to furnish cars for *shipment* on Sunday, but to furnish cars on Sunday for shipment *without unreasonable delay*. Cars placed in readiness on the defendant's switch at the proper place on Saturday, to remain there subject to plaintiff's use on Sunday, would be furnished on Sunday, without a violation of the Sunday law.

III. There is a contract pleaded, the breach of which would determine the liability of defendant, outside of the agreement to furnish cars. It is that it undertook to forward the hogs without unreasonable delay. *Pruitt v. Han. & St. Jo. R. R. Co.*, 62 Mo. 539. A contract begun on Sunday and completed on another day is not void. So a contract performed partly on

Sunday and completed on other days is good as to the other days. 2 Pars. Cont. 764.

PHILIPS, P. J.—I. A reversal of this judgment is sought principally on the ground that the petition does not state facts sufficient to constitute a cause of action. It is first objected that it is not averred that defendant had any knowledge that plaintiff was shipping the stock for sale in any particular market, nor that the contract was made with reference to the fluctuations of the Chicago live stock market, etc.

It is a sufficient answer to this branch of the case to say that no recovery was had on account of this fluctuation and consequent loss to plaintiff, as by the first instruction given by the court it expressly declared that under the pleadings and evidence plaintiff could not recover on this account.

The petition, however, contained a good cause of action aside from this matter.

The defendant, recognizing the obligation which the law imposes upon it as a common carrier of freight and live stock, to provide itself with all reasonable facilities and appliances for the transportation of such goods and stock as it holds itself out to the public as ready to engage in carrying, when offered (Hutch. Car., sect. 292), undertook to excuse the delay, by averring and showing that a bridge over its line was disabled, whereby it was forced to reach Chicago by another route and over another line of road, which unavoidably delayed its cars ; and that it was pressed with other orders for cars, etc. But, without more, this was not in law a sufficient justification. It is the duty of the carrier, when applied to for cars, to advise the shipper of the situation and circumstances which would likely occasion unreasonable delay. "He is not bound to provide in advance for extraordinary occasions, nor for an unusual influx of business ; neither will he be excused for not being provided with a sufficiency of conveyances and other means for transportation of that which he may reasonably expect to be offered. And

while an unusual press of business may justify his refusal to accept the goods which may be offered, if, having provided himself with reasonable facilities, he finds it impossible, from previous engagements, to commence its shipment according to the usual and regular course of business, yet if he do accept the goods without notice to the shipper of the circumstances, and obtaining assent, either express or implied, to the delay, he becomes bound to carry the goods within a reasonable time, and he will not be heard to say that his delay was caused by such contingency. He must, at his peril, inform the shipper of the necessary delay ; and even though it may occur from such cause upon a connecting route over which he has bound himself to carry the goods to destination, which may not be known to him at the time of acceptance, he is liable for any unreasonable delay in the transportation, and such unavoidable difficulty, though wholly unknown and unanticpated, will not excuse him." Hutch. Car., sect. 292.

This doctrine is recognized and affirmed by our supreme court in *Pruitt v. Ry. Co.* (62 Mo. 539.)

The defendant, so far as disclosed by the abstract of the record, did not advise the plaintiff of any of the hindrances to a shipment, within a reasonable time, at the time he tendered the hogs, nor when defendant received them in its pens.

II.   It is next alleged against the sufficiency of the petition that the twenty-seventh day of November, 1881, was Sunday, and that a contract to be performed on that day cannot be enforced, as being contrary to the statute. Sect. 1578, Rev. Stat.   It may be conceded that a contract, though entered into on a secular day, if for work or labor to be performed on Sunday, other than household offices of daily necessity, or charity, or other works of necessity, is illegal.

It may also be conceded to defendant that in the preceding part of the petition it is stated that the cars were to be furnished on the twenty-seventh of November,

1881, which was Sunday. But this may be treated as matter of inducement. The real *gravamen* and substantive part of the petition is contained in the subsequent averments, that on or about that day the plaintiff delivered to defendant, in its stock pens, hogs to be shipped to Chicago within a reasonable time ; that defendant so received them and undertook to ship them without unreasonable delay ; and that it had broken this undertaking as a common carrier. For this the law gives the plaintiff a right of action. As said by the court in *Pruitt ⅃ v. Railroad supra:* "The reception of the hogs in the pens of the company (omitting all consideration of the promise or contract of the station agent) was equivalent to an obligation to forward without unnecessary delay.

While the company could not lawfully be required to furnish cars on Sunday to load the hogs and move them, yet having received them into its pens for transportation, the law imposed upon it the duty as a common carrier to ship them after that day without unreasonable delay. The gist of this section is the negligent delay in shipping the hogs, which extended far beyond this Sunday. In this respect we think the case comes within the rule recognized by the supreme court of the United States in *Powhatan S. Co. v. Railroad* (24 How. 247-8.)

The defendant's answer and instructions clearly show that it regarded the issue as above indicated. Neither the defendant's nor the plaintiff's evidence showed that the cars were to be furnished on Sunday.

III. The instructions given by the court manifest that it found from the evidence that the delay in furnishing cars and making shipment of the hogs was unreasonable and without justification. An examination of the evidence satisfies us that the finding of the court was justified. At all events with its conclusion on the conflict of evidence we will not interfere ; especially must we so hold in view of the fact that the defendant failed to show that when the plaintiff's hogs were received for

shipment the defendant advised him of any obstacles in
the way of an immediate shipment.

The other judges concurring, the judgment is
affirmed