DAVID A. GELVIN ET AL., Respondents, v. KANSAS CITY, ST. JOSEPH AND COUNCIL BLUFFS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, March 22, 1886.

1. RAILROADS—CONTRACT FOR TRANSPORTATION—AUTHORITY OF STATION AGENT.—A station agent of a railroad company, clothed with the power, and whose duty it is to receive and forward freight, who makes a contract within the scope of his apparent authority, thereby binds the company he represents, although in making such contract he may have exceeded his authority, and when such company seeks to absolve itself from liability arising on such contract, on the ground that the agent, although apparently authorized to make it, in fact had no such authority, it must show that the party with whom the contract was made had knowledge of the fact that the agent was acting beyond his authority. And the question as to whether the shipper had notice of the limitation on the agent's authority is one of fact for the jury, to be submitted to them under proper instructions.

2. PRACTICE—INSTRUCTIONS—DUTY OF TRIAL JUDGES CONCERNING. Where the instructions asked of the trial court on both sides are unnecessarily numerous and abounding in repetitions and platitudes, the trial judge could afford some relief against the evil by brushing aside the mass, and in explicit instructions, sufficient in number to cover the essential, controlling issues, declare the law to the jury.

3. —— —— MEASURE OF DAMAGES IN CASE OF DELAYED SHIPMENT OF STOCK.—In order to justify an instruction that the jury should take into consideration the variance in the market value of stock at the point of destination, between the time when they should have reached there, had they been shipped according to contract, and the day of their arrival, it must be averred in the petition that the shipper informed the agent, or that he knew at the time of making the promise, that the stock were designed for sale in that market. But the knowledge of such fact on the part of the agent may be inferred from all the facts and circumstances in evidence; but to admit such proof, and make it a basis of recovery, the fact must be alleged in the petition. And the true measure of damages is the difference between the market value at point of destination, at the time stock *should* have arrived if the contract had been kept, and their value at same time at point of shipment.

VOL. XXI—18

Appeal from Holt Circuit Court, Hon. H. S. Kelley, Judge.

*Reversed and remanded.*

The case and facts are stated in the opinion of the court.

Huston & Parrish, for the appellant.

I.   The court erred in overruling defendant's demurrer to the evidence. The petition counts alone on a *special contract*, not on the violation of any duty imposed by law upon defendant as a *common carrier*. Therefore, the law of common carriers is not applicable. The case is to be tested by the law of *contracts* and *agency* applicable to *all* alike. *Collier v. Swinney*, 16 Mo. 484. The court cannot judicially take notice of the duties of a station agent on defendant's railroad. *McGowan v. Railroad*, 61 Mo. 528; *Brown v. Railroad*, 67 Mo. 122. There was nothing in the evidence tending to prove what the duties of the station agent were—nothing to prove that he *actually had* the power to make the alleged contract; nothing tending to prove that the defendant held him out to the public as having such authority, and the testimony showed affirmatively to the contrary of these. *Grover, etc., S. M. Co. v. Railroad*, 70 Mo. 672; *Brown v. Railroad*, 67 Mo. 122; *Wood v. Chicago Ry. Co.*, 24 N. W. Rep. 46. The plaintiff having sued on a special contract could not recover in any case for breach of duty as common carrier. He might have alleged the special contract, and *also* that he tendered the stock for shipment, but he only alleges the special contract, and he could not recover on a cause of action different from that declared on. *Bullene v. Smith*, 73 Mo. 151; *Evans v. Railroad*, 72 Mo. 212; *Bank v. Armstrong*, 59, Mo. 72.

II.   The court erred in giving plaintiffs' instructions.

One of them *assumed* a promise, which was in issue. So as to the *second* there was neither allegation nor proof to show that the stock was to be sold in Chicago ; nor any limit of the damages to the fall in that market. "The measure of damages to which plaintiff was entitled was the difference between the market price at the destination at the time it would have arrived there, and its value at the same time at the place from which it was to have been carried." Hutch. on Carriers, sect. 774 ; *Birney v. Wabash Railroad*, 20 Mo. App. 471. Another instruction submitted to the jury without *explanation* whether Leach was, in making the alleged contract "acting *within the scope of his apparent authority*." The facts constituting an agency should have been defined. *Wiser v. Chesley*, 53 Mo. 547.

III. The court erred in refusing instructions asked by defendant. They were pertinent and there was evidence tending to prove the matters alleged.

IV. The court erred in admitting hearsay evidence, as to the market value of the stock. The witnesses were not only incompetent, but uninformed.

V. This case is clearly distinguishable from *Pruitt v. Railroad* (62 Mo. 527), and *Harrison v. Railroad* (74 Mo. 364.) In both these cases the defendants were liable under the facts stated, as common carriers, the special contracts were entirely immaterial.

CROSBY, RUSK & CRAIG, for the respondents.

I. The question of the station agent's authority to contract for the furnishing of cars at a specified time was properly submitted to the jury. *Pruitt v. Railroad*, 62 Mo. 527 ; *Harrison v. Railroad*, 74 Mo. 364.

II. The contract was for services within the line of defendant's business of which the agent had charge, it being the first duty of a common carrier to provide sufficient means of conveyance. Hutch. on Carriers, sect. 292.

III. In estimating the damages such consequences,

as from the nature and subject matter of the contract may be reasonably thought to have been in the contemplation of the parties, at the time it was entered into, should be taken into account. Field on Damages (2 Ed.) sect. 385. The damages alleged in the petition are the approximate and natural result of the breach alleged, and when construed together the instructions given declared the law as applied to the facts in evidence (Field on Damages (2 Ed.) section 374), and any fancied errors in giving or refusing of instructions, or the admission of testimony, will appear to have been harmless.

PHILIPS, P. J.—This is an action to recover damages consequent upon the failure of the defendant railroad company to furnish cars at a designated time for the shipment of plaintiffs' live stock.

The petition alleges that "on or about the eleventh day of April, 1881, in consideration of the promise then and there made by plaintiffs, that they would drive to the defendant's station, in the town of Maitland, Missouri, and have there on a certain day, to-wit, the fourteenth day of April, 1881, ready for shipment, and to be shipped over defendant's railroad to Chicago, Illinois, cattle sufficient to fill twelve cars, and hogs sufficient to fill four cars, the defendant undertook and agreed to provide, furnish, and have at its said station, in Maitland, on a certain day, to-wit, said fourteenth day of April, 1881, sixteen cars in readiness to receive and transport plaintiffs' said cattle and hogs as aforesaid; that plaintiffs, relying on said undertaking and agreement, drove said cattle and hogs to said station, and on said fourteenth day of April, 1881, had at said station, ready for shipment, and to be shipped over defendant's said railroad to Chicago, Illinois, cattle sufficient to fill twelve cars, and hogs sufficient to fill four cars. Plaintiffs further state the defendant, disregarding its said undertaking and agreement, failed to provide, furnish or have in readiness at its said station on said

fourteenth day of April, 1881, any cars in which to receive and transport plaintiffs' cattle and hogs, as aforesaid, and did not furnish or provide such cars, or any cars, in which to receive and transport plaintiffs' cattle and hogs, as aforesaid, until the seventeenth day of April, 1881, by reason of which said failure of de fendant to provide said cars at the time and place agreed upon as aforesaid, plaintiffs' said cattle and hogs were detained at said station, and were not, and could not be shipped therefrom on their way to Chicago, until on or about the said seventeenth day of April, 1881, to plaintiffs' damage," etc.

This is followed by specifications of the particular losses and damages sustained by reason of defendant's alleged delinquency.

The answer, after tendering what I cannot better designate than a partial general issue, set up as a special defence, that at that period, at its various stations along its line of road, there was an unusual quantity of live stock for shipment over its road, beyond the capacity of its supply of cars, which supply was sufficient for the ordinary demand; and that notwithstanding it obtained cars from other roads it was unable to meet the demands upon it promptly. It alleged that plaintiffs had knowledge of this fact; but there was no direct proof of such knowledge on the part of plaintiffs, or that the agent so notified them when they applied for transportation.

The plaintiffs' evidence tended to show that defendant's station agent at Maitland did make the contract with plaintiffs to have the required number of cars at said station for their use at the time alleged, provided they would then have their stock there ready for shipment. The evidence further showed that plaintiffs did so present their stock for shipment, and that they were delayed several days thereafter on account of defendant's failure to keep its said promise. They also made proof of the damages resulting from this detention.

Defendant's evidence was directed mainly to show-

ing that its said agent had no authority from it to make such promise and agreement to have the cars ready at a particular time, and that he was prohibited therefrom by special directions and instructions from the general freight agent, whose office was at the city of St. Joseph, Missouri ; and that it was the custom and requirement for such local agents to forward to said general agent all requisitions for supplies of cars to shippers. To this end it introduced the testimony of several shippers over its road to the effect that they understood that all such applications were simply forwarded by the local station agent to the headquarters at St. Joseph. It also introduced evidence tending to show that at that time there was an unusual demand for transportation over its road, and that it furnished cars as rapidly as it could in the order of the date of the applications. The proof was hardly sufficient to go to the jury that plaintiffs knew of the custom or regulation requiring the station agent to send such applications to headquarters for action and approval, or that they dealt with the agent on this occasion with such understanding.

Plaintiffs recovered judgment, from which defendant prosecutes this appeal.

I. The first question in importance raised on this appeal is as to the authority of the station agent at Maitland to make the alleged promise to and contract with plaintiffs. Appellant contends that he was only a special agent, with limited authority, and invokes the general rule, that he who deals with a special agent must take notice of the limitations placed upon his agency by the principal.

This proposition is enforced with much zeal and ability by counsel.

But we feel precluded from an examination in detail of this question, for the reason, as we conceive, that our supreme court have decided it adversely to defendant's contention in the cases of *Pruitt v. Ry. Co.* (62 Mo. 527), and *Harrison v. Ry. Co.* (74 Mo. 364). In the

former case Napton, J., who delivered the opinion of the court, said : "With regard to the third instruction, which is based on the hypothesis of a contract between the plaintiff and the station agent, it is urged here that such agents have no power to make such contracts.  The general understanding of the country is, that such agents are placed there for the express purpose of receiving and forwarding freights, and making such contracts in reference thereto as they are authorized by the company to make.  The fact that, in particular instances, the agent exceeds his authority by making engagements, which his principal's instructions forbid, is certainly a matter of which the public cannot take notice, unless conveyed to the public in such a manner as would authorize the inference that shippers are apprised of the restrictions.  It is difficult to see how the business of a railroad could be successfully conducted, in reference especially to live stock, unless the owners have the right to rely on the representations of the station agents as to the time in which to deliver the stock.  It is convenient to both parties that such power should be given to the agents, as stock dealers would be placed in a position which might subject them to unnecessary expense, if not informed, at least within a reasonable time, of the day when it will be convenient for the railroad to transport the stock."

The Harrison case is still more conclusive.  The petition expressly counted on a verbal contract with the station agent to furnish cars at a given day.  The answer interposed the defence of the limitations on the authority of the station agent.  Norton, J., who delivered the opinion of the court, said :  "It may, we think, be safely affirmed that a station agent clothed with the power, and whose duty it is to receive and forward freight, who makes a contract within the scope of his apparent authority, thereby binds the company he represents, although in making such contract he may have exceeded his authority, and when such company

seeks to absolve itself from liability arising on such contract on the ground that the agent, although apparently authorized to make it, in fact had no such authority, it must show that the party with whom the contract was made had knowledge of the fact that the agent was acting beyond his authority."

There being no question in this case that the station agent at Maitland was clothed with authority to receive and forward freight, it was within his apparent authority to make the contract in question as to the particular day on which the company would receive and ship the stock. *Denning et al. v. G. T. Ry. Co.*, 48 N. H. 455.

II.   The question as to whether plaintiffs had notice of the limitation on the agent's authority, and of the custom claimed by defendant, was one of fact for the jury, and was most favorably for defendant submitted in the instructions, which went further than the law, as held in *Harrison v. Ry. Co.*, *supra*, in saying that if plaintiffs could have known of such limitation, etc., by the exercise of ordinary care.

III.   The only remaining questions important to be considered arise on the instructions of the court. Characteristically, on such trials, the instructions on both sides are almost interminable, abounding in repetitions and platitudes.   It seems in vain that the courts condemn this vicious practice.   Their publication fills the reports to no good purpose.   Their multitude confuse juries, and exhaust the courts with their review. The trial judge could afford some relief against this evil by brushing aside the mass, and in explicit instructions, sufficient in number to cover the essential, controlling issues, declare the law to the jury.   And when the trial judge thus substantially covers all the issues, the appellate courts should not undo his work on unsubstantial technicalities.

IV.   Under an instruction given on behalf of plaintiffs the jury were authorized, in estimating plaintiffs' damages, to take into consideration the variance in the

market value of the stock in Chicago between the time when they should have reached there, had they been shipped according to contract, and the day of their arrival. This was error. It is not averred in the petition that the plaintiffs informed the agent, or that he knew, at the time of making the promise, that the cattle were designed for sale in the Chicago market. This was essential to warrant the instruction. *Guinn v. Wabash Ry. Co.*, 20 Mo. App. 453; *Richardson v. Ry. Co.*, 21 N. W. Rep. 49; Hutch. on Car., sect. 772.

The knowledge of such fact on the part of the agent may be inferred from all the facts and circumstances in evidence without direct proof that the shipper so informed him at the time of the contract of shipment; but to admit such proof and make it a basis of recovery the fact must be alleged in the petition.

As the case is to be remanded it is well enough to observe that plaintiffs' proof of the imputed decline in the Chicago market was hardly competent. And the instruction was also faulty in not limiting the inquiry as to the decline touching the grade of plaintiffs' cattle. The true measure of damages on such issue is the difference between the market value at Chicago, at the time the cattle would have arrived there if defendant had kept its contract, and their value at the same time at Maitland. Hutch. on Car, sect. 774; *Birney v. Wabash, etc., Ry. Co.*, 20 Mo. App. 471.

The judgment of the circuit court is reversed, for the errors aforesaid, and the cause remanded for further proceeding. Ellison, J., concurs. Hall, J., absent.