Wilson & Aull v. Mo. Pac. R'y Co.

WILSON & AULL, Respondents, v. MISSOURI PACIFIC
RAILWAY COMPANY, Appellant.

## Kansas City Court of Appeals, May 4, 1896.

1. **Common Carriers**: AUTHORITY OF STATION AGENT: INSTRUCTION. When a station agent clothed with power to receive and forward freight makes a contract within the scope of his apparent authority, he thereby binds the company though he exceed his actual authority, unless the company show that the other party to the contract had knowledge of the acts being beyond the agent's authority; and an instruction in this case telling the jury that there was sufficient evidence to establish the authority of the agent to make the verbal contract in suit, was properly given.

2. ———: LIMITING LIABILITY: CONSIDERATION. A reduction of an illegal rate is not a sufficient consideration for the release from the carrier's common law and statutory liability.

3. ———: ILLEGAL RATE: MAXIMUM RATE. The statutory maximum rate for a car load for a given distance was $17. The agreed rate was $14.30. The maximum rate fixed by the carrier was one hundred and fifty per cent of the agreed rate. *Held*, an illegal rate and, therefore, no rate.

4. ———: INSTRUCTION: HARMLESS ERROR. An instruction in this case telling the jury that the release clause in the contract of shipment was void, while subject to some criticism, is *held* harmless error as no other verdict could have been returned.

5. ———: SHIPMENT OF STOCK: MEASURE OF DAMAGES. In an action for breach of contract of shipment of stock, whereby the arrival in market was delayed and the market price fallen, the measure of damage is the difference in the price at the time when they did arrive and when they should have arrived.

6. ———: SHIPMENT TO MARKET: KNOWLEDGE OF CARRIER'S AGENT: EVIDENCE. The evidence in this case sufficiently shows the knowledge of the carrier's agent that the shipment was intended to be made to the market.

7. ———: SHIPMENT BY OTHER LINE: EVIDENCE. The evidence fails to show that plaintiffs, after refusal of defendant to keep their contract, could have shipped their stock over another line.

*Appeal from the Lafayette Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Wm. S. Shirk* for appellant.

(1) It was error for the court to permit the plaintiffs to introduce evidence showing a decline in the market price of such cattle at Kansas City between the tenth and twelfth days of July, for the reason that this is an action for damages for failure to ship the cattle as defendant agreed to do. In such case the only measure of damages is the difference in value of the cattle at the point of shipment, on the ninth day of July, when defendant refused to ship them, and their value at the point of destination when they would have arrived there, if they had been shipped on the evening of the ninth of July. Such has been the express ruling of this court, every time the question has been before it. *Birney v. Railroad*, 20 Mo. App. 471; *Gelvin v. Railroad*, 21 Mo.. App. 273. And such is the law everywhere. Hutch. on Carriers, sec. 774; *Galena v. Railroad*, 18 Ill. 488; *Bridgeman v. The Emily*, 18 Iowa, 509; *Harvey v. Railroad*, 124 Mass. 421; *Railroad v. Elkins*, 34 Mich. 439; *People v. Railroad*, 22 Hun, 533; *Fox v. Heyward*, 4 Brewster, 32; *McGovern v. Lewis*, 56 Pa. 231; *Railroad v. The People*, 71 Pa. 350. (2) Inasmuch as plaintiffs voluntarily introduced evidence showing that they could have shipped the stock with but little delay, by the Chicago and Alton railroad from Mayview, from which they had been in the habit of shipping, it was their duty to do so; in which case the measure of damages would have been entirely different. Not having done so, they can recover nothing in this case. Hutch. on Carriers, sec.

774, latter clause.   (3) It was error to give the plaintiffs' first instruction.   In it the court usurped the province of the jury by telling them what it proved, and is a commentary on the evidence.   *Meyer Bros. v. McMahan,* 50 Mo. App. 18; *State v. Seal,* 47 Mo. App. 603.

*Alexander Graves* for respondent.

(1) Respondents do not rely altogether upon the notice which was served upon the appellant.   Not abandoning this position, however, we do especially rely upon the decision of this court in *Paddock v. Railroad,* 60 Mo. App. 328, *et seq.,* wherein this court expressly held that the tenth clause in the identical shipping contract was null and void because the rates therein named, to which the shipper was forced to accept, were contrary to the statute.   (2) Complaint is also made concerning the measure of damages as declared by the instructions granted for plaintiffs.   These instructions are fully warranted by the case of *Harrison v. Railroad,* 74 Mo. 364; *Armstrong v. Railroad,* 17 Mo. App. 406.   (3) The authority of the agent Loomis to make the verbal contract to ship on the ninth of July was fully proved by himself on his cross-examination. Besides, he had apparent authority to make said contract and acted as vice principal in the premises, there being no evidence offered to show any limitation of his authority.   *Harrison v. Railroad,* 74 Mo. 364; *Miller v. Railroad,* 60 Mo. App. 252, *et seq.*

SMITH, P. J.—This is an action to recover damages for the breach of a verbal contract, by which the defendant undertook to receive and ship ten car loads of cattle, on the evening of July 9, 1894, from its station at the city of Lexington, to Kansas City.

The defense interposed by the answer was that on the eleventh day of July, 1894, the plaintiffs and defendant entered into a written contract, for the shipment of the plaintiffs' cattle, in which said contract there was a clause to the effect that the plaintiffs released any and all causes of action for damages that might have accrued to them on any verbal contract entered into prior to the execution of such written contract.

The replication was that the said release pleaded by the defendant was without consideration and void.

There was a trial and judgment for plaintiffs, and from the latter the defendant has appealed.

I. The defendant objects that the trial court erred in giving that part of plaintiffs' first instruction which declared to the jury that the evidence was sufficient to support the authority of defendant's station agent to verbally contract to ship the plaintiffs' cattle from Lexington station, on the night of July 9, 1894. The authority of the servants of a carrier is ordinarily a question of fact, like any other fact to be determined by the jury, and the burden of proof rests on the party claiming such authority. 2 Redfield on Railways, 145–149. When a station agent, clothed with the power to receive and forward freight, makes a contract within the scope of his apparent authority, he thereby binds the company, though he may have exceeded his authority; and when such company seeks to avoid liability, arising under such contract, on the ground that its agent had no such authority, it must show that the party with whom the contract was made had knowledge of the fact that the agent was acting beyond his authority. *Pruitt v. Railroad*, 62 Mo. 540; *Harrison v. Railroad*, 74 Mo. 364; *Northrup v. Ins. Co.*, 47 Mo. 439; *Miller v. Railroad*, 62 Mo. App. 252.

In the present case the undisputed evidence shows

that the defendant's station agent was authorized to receive and forward freight, and that the making of the contract in question was within the scope of his apparent authority. It must be therefore held, as a matter of law, that he thereby bound defendant, although he may have exceeded his authority, since it does not appear that the plaintiffs had knowledge of the fact, if it was a fact, that he was acting beyond his authority. We do not think that it was error for the court to direct the jury, as it did, to the effect that the evidence was sufficient to establish the authority of the defendant's agent to make the contract. If the question of the authority of defendant's station agent had been left to the jury, under a proper instruction, they could not have found otherwise than that the defendant's agent had the authority claimed by plaintiffs. Even though the part of the instruction referred to is inaccurate in its expression of the law, it was nevertheless harmless.

II. The defendant further objects that the court erred in giving the plaintiffs' second, and in refusing defendant's third, instruction in relation to the release pleaded and relied on by defendant as a defense. The written contract of affreightment under which the plaintiffs' cattle were shipped, provided that the defendant would ship plaintiffs' cattle from Lexington station to Kansas City, "at the rate of $14.30 per car, said rate being less than the rate charged for shipments transported at carrier's risk," or a reduced rate. The release pleaded was embraced in the tenth clause of this contract.

The "freight tariff," of defendant, in force at the time of plaintiffs' shipment, contained the following special instructions to its agents, viz.: "(4) One hundred and fifty per cent of the rates named in this tariff will be charged on shipments made without limi-

tation of company's liability at common law and under the statutes.''

The undisputed evidence showed that the distance from Lexington to Kansas City is forty-three miles. By section 2674, Revised Statutes, live stock is placed in class "H;" and, under section 2675, the maximum charge of class "H" is $10 per car load for the first twenty-five miles, and $7 per car load for the second twenty-five miles. The maximum rate which defendant was allowed to charge, under the statute, for a car load of cattle shipped from Lexington to Kansas City, was $17. When the plaintiffs offered their cattle for shipment, the defendant in effect said to them something like this: "We will charge you our maximum rate of one hundred and fifty per cent of the rate named in our "Freight Tariff," or $21.45 for each car load of cattle we transport for you from Lexington to Kansas City, unless you will enter into a special contract of affreightment with us releasing any cause of action you may have, under the prior verbal contract made with us, in which case we will ship your cattle for our minimum rate of $14.30 for each car load." But, as we have just seen, one hundred and fifty per cent of the rate named in defendant's freight tariff would be in excess of the maximum rate allowed by the statute. The plaintiffs were required by the defendant to accept one of two alternatives, namely: to either pay the defendant's illegal and extorsive maximum rate, or execute the written contract releasing the cause of action that had accrued to them against defendant, on their prior verbal contract for the shipment of the cattle, and thereby get defendant's minimum rate.

A case might well be, if this is not one, where the defendant's minimum rate added to the amount of the damages sustained by the breach of the prior verbal agreement by the carrier, would very far exceed the

maximum rate of the latter. The defendant did not show that it had a higher legal rate in force than that specified in the release contract. The one hundred and fifty per cent of the rate named in its freight tariff was illegal and therefore not a valid rate. If there was no higher rate than that charged, how can it be said that the rate charged in the release contract was a reduced rate? Reduced from what rate? A reduced rate implies that there was a higher legal rate, of which, as we have seen, there was none. Since the rate charged was not a reduced rate, from a higher to a lower, it is obvious that it could constitute no consideration whatever for the release. If there was no consideration for the release, it was inoperative. *Paddock v. Railroad*, 60 Mo. App. 328; *Duvenick v. Railroad*, 57 Mo. App. 550.

The plaintiffs' said second instruction, telling the jury that the release clause was void, if they believed from the evidence that the plaintiffs had given notice when they executed the same, that they did not waive their claims for damages for the breach of the prior verbal contract, while not a correct exposition of the law, yet, inasmuch as the verdict was the only one the jury could properly have returned on the issue as to the release, we think the error was harmless. *Green v. Bank*, 128 Mo. 559, and cases there cited. As the enunciation of the defendant's said third refused instruction is at variance with the views of the law in this paragraph expressed, we must hold that it was properly refused.

III. The defendant objects that the court erred in giving the plaintiffs' third instruction authorizing the jury, in estimating the damages, to take into consideration the variance in the value of the cattle in Kansas City, between the time when they should have reached there, had they been shipped on the ninth day

of July, according to the verbal contract, and the day of their arrival. The petition plainly alleged that the verbal contract was that the defendant would transport plaintiffs' cattle, on said date, from Lexington to Kansas City, so that the same would be upon the market the next day. It further alleged that had the plaintiffs' cattle been shipped according to said verbal contract, they would have been sold on the Kansas City market on the tenth day of July, at $4.75 per hundred weight, which was their market value; but that by reason of the failure of defendant to keep said contract, said cattle did not reach said market, and were not sold until the twelfth day of said month, on which day they were sold for $4.45 per hundred weight, the then market value of the same—the market for such cattle having fallen, from the tenth to the twelfth day of July, thirty cents per hundred.

The provision in the verbal contract pleaded to the effect that the plaintiffs' cattle were to be shipped on the day named so as to be on the Kansas City market on the next day, sufficiently imparted the information to defendant's agent that the cattle were designed for sale in that market. This brought the plaintiffs' design in that regard directly to the knowledge of the defendant, when the contract was made. The petition, therefore, contained every essential required by the precedents to warrant the instruction. *Gelvin v. Railroad*, 21 Mo. App. 273; *Guinn v. Railroad*, 20 Mo. App. 453; *Armstrong v. Railroad*, 17 Mo. App. 403. *Johnson-Brinkman v. Railroad*, 64 Mo. App. 590.

In *Armstrong v Railroad, ante*, the rule for the admeasurement of damages was declared by Judge ELLISON to be the " difference in the price at the time when the stock did arrive and when it should have arrived." In *Glasscock v. Railroad*, 69 Mo. 588, it is said that, "the true measure of damages was the differ-

ence between the market price of the cattle when they did arrive and when they should have arrived at their destination, and the difference between the actual and usual shrinkage of the cattle. *Sturgeon v. Railroad*, 65 Mo. 570. The question for the jury was not the difference between the price of the cattle on Tuesday, when plaintiff sold them, and the price when they arrived, but the difference between the price when they arrived at the place of destination and when they ought to have arrived, had there been no delay.

And so it has been ruled in this state that where a carrier receives stock for shipment to a distant market under a contract of affreightment and fails to transport and deliver the same in a reasonable time, the measure of the shipper's damages is the difference in price of the stock when it ought to have been delivered, and when it was actually delivered at the place of destination. *Tucker v. Railroad*, 50 Mo. 385; *Faukner v. Railroad*, 51 Mo. 311. And a like rule prevails in many other jurisdictions. *Ward v. Railroad*, 47 N. Y. 29; *Kent v. Railroad*, 22 Barb. 278; *Peet v. Railroad*, 20 Wis. 594; *Lessin v. Railroad*, 14 Mich. 489; *Railroad v. Ragsdale*, 46 Miss. 458; *Weston v. Railroad*, 54 Mo. 376; *Whalon v. Aldrich*, 8 Minn. 346. And the rule just referred to we think applicable to a case like the one under consideration.

It is true that it was declared in *Gelvin v. Railroad*, *ante*, that the true measure of damages in a case like this is the difference between the market value at Kansas City, at the time the cattle would have arrived there, if the defendant had kept its contract, and their value at Lexington. And this rule has the support of a number of authorities cited by defendant in its brief. But no reason is seen why the measure of damages should be different in a case where the carrier contracts to receive and transport live stock or commodities of

any kind and receives but does not transport the same within a reasonable time, or at a particular time, if the contract so require, from that in a case where the carrier neither receives nor transports, at the time required by the contract entered into with the shipper. If the shipper is delayed in getting his property to the market until there be a decline in the price there, whereby he is compelled to sell for a less price than he would have obtained had the carrier kept its contract, why ought not the measure of his damages be the same whether occasioned by the failure of the carrier to transport the property after receiving it, or by his failure to both receive and transport it? The damages resulting to the shipper from the breach of the contract are just the same, whether it is occasioned in the one way or the other. The elements entering into the damages are the same in either case. Therefore, to say that if the carrier receives the property, but does not transport and deliver it according to his contract, the rule for determining the damages resulting therefrom to the shipper should be different from that where it neither receives nor ships the property, is asserting a distinction without a reason; and especially so where as here, since it appears that the plaintiffs had their cattle ready at all times for shipment, from the time the defendant refused to ship them until it did so; and since, too, they could not have sooner shipped them by any other line and thus avoided in whole or in part the damages entailed on them by the defendant's breach of contract. We think the rule for the admeasurement of the damages embodied in plaintiffs' said instruction is in accord with reason and authority and should be approved by us.

IV. It is a sufficient answer to the defendant's objection that there was no evidence adduced showing that the defendant's agent at the time of the making

of the verbal contract, knew that the plaintiffs intended to ship their cattle to Kansas City, for sale on that market, that this information was sufficiently imparted by the provisions of the contract itself, and if not, then the knowledge of that fact by the agent was inferable from all the facts and circumstances in evidence. It was not necessary to establish the fact by direct proof. *Gelvin v. Railroad, ante.*

V. The plaintiffs did not testify that they could have procured transportation for their cattle over the line of the Chicago & Alton railway, after defendant had refused to keep their contract. It does not appear from any evidence presented by the record that the line of the said Chicago & Alton railway extended from Lexington to Kansas City, and that plaintiffs, after the defendant's default, could have procured transportation for their cattle by that line. It does sufficiently appear, however, that the nearest station of the said Chicago & Alton railway was several miles away, and therefore there are no facts proved bringing plaintiffs within the rule stated by Mr. Hutchinson in his work on Carriers at page 774.

Thy judgment is, we think, for the right party, and ought to be affirmed; which is ordered accordingly. All concur.