## Solomon Mayer v. Albert Brensinger.

1. JOINT LIABILITY—*Failure to Prove is Variance and Should be Pointed Out in Trial Court.*—Where a plaintiff brings suit against two defendants declaring on a joint liability *ex contractu,* and the evidence shows that one of the defendants is not liable, a claim in a court of appeal, that the other defendant can not be held liable under such circumstances, is only another way of claiming there can be no recovery because of a variance between the allegations and the proofs, and can not avail such defendant unless the record shows that he pointed out to the trial court, in apt time, wherein there was a variance, so as to allow plaintiff to amend.

2. EVIDENCE—*To Show Possession of Money Alleged to Have Been Deposited, Proper.*—In a suit for money alleged to have been deposited with the keeper of safety deposit vaults, evidence to show where the plaintiff got the money which he claims to have deposited is material, as tending to support his case, and may properly be admitted.

3. SAME—*Part of a Record as Proof of a Collateral Fact.*—Where part of a record is offered by a plaintiff, not as the basis of his case, but to prove a collateral fact, and where the balance of the record is in no way material to any issue in the case, the failure to introduce the entire record furnishes no ground of complaint.

4. BAILMENT—*Keeper of Safety Deposit Vaults, Liable as a Bailee for Hire.*—A keeper of safety deposit vaults is liable as a bailee for hire, and must exercise at least ordinary care in keeping property intrusted to him, and in this case the court thinks that a failure to exercise such care is shown by the evidence.

Assumpsit, for money deposited in safety deposit vaults.   Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.   Heard in this court at the October term, 1897.   Affirmed.   Opinion filed March 3, 1898.

FELSENTHAL & D'ANCONA and HENRY ROTH, attorneys for appellant.

F. L. RUMBLE, EDGAR MADDEN and C. F. GOODING, attorneys for appellee.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Appellee brought suit in assumpsit against appellant and Simon Mayer, to recover certain moneys claimed to have been deposited by appellee in a box in the safety deposit vaults of appellant about October 1, 1895, and which moneys, it is claimed, were last seen by appellee in the box on September 25, 1896, but were not in the box and could not be found the latter part of October, 1896, except the sum of $120, when the box was forced open in the presence of appellee and a son of appellant.

At the close of the evidence the suit was dismissed as to Simon Mayer, but no amendment was made in the declaration. A verdict in favor of appellee for $4,480 against appellant was rendered, on which the court entered judgment, from which this appeal is taken.

Appellant claims the court should have instructed a verdict in his favor; that the court admitted improper evidence, and also refused, improperly, the second and third instructions asked by appellant. The original declaration consists of a special count, alleging that defendants, on October 13, 1896, became indebted to plaintiff in the sum of $6,000 for money before that time deposited by plaintiff with defendants and received by defendants for safe keeping for the use of plaintiff, and also the common counts.

Later, and a short time prior to the trial, an additional count was filed, alleging, in substance, that defendants were the keepers and managers of a warehouse or safety deposit vault, wherein they received, stored and kept, for a consideration, the property of others; that they rented to plaintiff a box in said vaults for $3 per year, wherein to deposit money and property of plaintiff for safe keeping; that in consideration of said payment by plaintiff, defendants under-

took and promised plaintiff to safely keep for him all such moneys, etc., as plaintiff might from time to time thereafter within one year, deposit in said box for safe keeping, etc., and that defendants would permit no other person to have access to said box, and that said moneys, etc., should not be delivered to or removed or taken away from said box by any person save and except the plaintiff; that plaintiff deposited in the box $5,000 in money during said year, of which defendants had notice, yet defendants did not safely keep said money, but permitted the same to be taken from the box without the knowledge or consent of plaintiff, whereby said money became and was lost to plaintiff and has never been recovered by him, etc.

Appellant's contention is that as appellee counted on joint liability *ex contractu,* and there being no evidence to show that Simon Mayer is liable, it would follow, the pleadings not being amended, that appellant is not liable.

This position is, in our opinion, untenable for two reasons :

*First,* because that is only another way of claiming there can be no recovery because of a variance between the allegations and the proof. That there is a variance, can only avail the defendant when he has pointed out to the court, in apt time, wherein there is a variance, so as to allow plaintiff to amend and thus avoid it. It nowhere appears in the record, either in the motion to direct a finding for defendant, or in the motion for new trial, that this variance was called to the attention of the court. It now comes too late. McCormick, etc., Co. v. Sendzkowski, opinion filed Dec. 16, 1897, by this court, and cases cited.

*Second.* It is not tenable, because the statute of amendments, Ch. 7, Sec. 6, provides that no judgment or verdict shall be reversed by reason of any imperfections, omissions, defects, matters or things, in the process, pleadings, proceedings or records, nor for any mispleading nor insufficient pleading.

Had the objection been specifically pointed out, an amendment of the declaration could readily have avoided it. Dick v. Eddings, 42 Ill. App. 488.

We think the cases cited by appellant on this point are not applicable to the case at bar.

Evidence was offered by appellee, in chief, which was admitted over appellant's objection, tending to show where appellee got the money which he claimed to have deposited with appellant. This was a matter within the discretion of the trial court. It was certainly material, as tending to support appellee's case, and we think was properly admitted. In the same line, and evidently for the same purpose, the court admitted in evidence, over appellant's objection, a properly certified and authenticated copy of the last will of appellee's mother, and also of an order of distribution of her estate in the County Court of Lewis and Clarke County in the State of Montana. The will shows that to appellee, after the payment of debts, expenses of last sickness and funeral, and certain specific legacies, the whole estate was devised and bequeathed. The order of distribution shows that the executors of said estate were directed to pay and turn over to appellee the residue of said estate in their hands, certain personalty (including $4,845.68 in money) and certain real estate. Appellee says he received the money so ordered to be paid to him. The will and order were material as supporting appellee by tending to show that he received more than the amount of money he claimed to have deposited in his box in appellant's vaults, at a time not so remote from the date of deposit as to make it immaterial. A special objection to the order is made, because the whole record was not offered, but it is not tenable, inasmuch as the record was offered to prove a collateral fact not as the basis of plaintiff's case. A different question would be presented were this order the basis of plaintiff's recovery, or as an adjudication of any fact on which his right of action depended. We think the authorities cited by appellant do not sustain his contention. 1 Greenleaf's Evid., Sec. 511; 2 Jones on Evid., Secs. 607 and 635.

We are unable to see, however, how appellant could be prejudiced because a part of the record, so far as we can see in no way material to any issue in the case, was not offered.

Several other objections are urged as to the rulings of the court in allowing certain questions put to the witnesses to be answered, but after careful consideration of each of them, we are of opinion there is no reversible error in any of the court's rulings in these matters.

It is also contended by counsel, that the verdict is not sustained by the evidence; that the plaintiff's testimony as to the amount he claims to have placed in his safety deposit box is not explicit enough to warrant the verdict; that his testimony throughout is contradictory and indefinite; that he is shown to be mentally deranged in so much that his statements can not be relied on, and that his manner, actions and conduct were such at the time the box was forced open and he first learned of his alleged loss, as to discredit him.

It would extend this opinion to great length to discuss the evidence, which is quite voluminous. We have carefully read the whole evidence, and are unable to reach the conclusion that the plaintiff's evidence is not amply sufficient to justify the amount of the verdict. The evidence tending to show that appellee was mentally deranged falls short, in our opinion, of showing that his testimony could not be relied on, and his manner, actions and conduct at the time his box was forced open, in so far as they might tend to discredit him, were testified to by Simon Mayer, a son of appellant, who must certainly be considered an interested witness, because of his relationship to appellant, and his being a defendant himself up to the close of all the evidence. Simon Mayer's testimony is also such, aside from his interest, as to justify the jury, in great part at least, if not wholly, in disregarding his evidence. He testified that on October 17, 1896, a man giving the name of L. J. Rowe, accompanied by another whose name he says he did not get, presented to witness appellee's box key and a power of attorney purporting to be signed by appellee, which, he says, empowered Rowe to act for appellee, to have access to his safety deposit box and to transact further business for appellee, and acknowledged before a notary public; that after considerable conversation with Rowe (which is detailed in

the evidence), and comparing appellee's signature in his possession with the signature on the power of attorney (assisted by one Blondin, a vault clerk), he permitted Rowe to have access to appellee's box in witness' presence; that Rowe signed an entrance slip (which was produced and identified by the witness, and is signed " Albert Bronsenger by L. J. Rowe "); that Rowe did not take anything out of the box; that he could see that nothing was taken out of the box— nothing could have been taken out, because he (Rowe) would have it in his hands; that he (witness) saw what the man was doing; that he allowed Rowe to take away the power of attorney, because he said he wished to use it to transact some other business for appellee, who was very sick and not expected to live through the day, but did not take the name of the notary before whom it purported to be acknowledged; that when appellee opened his box after the lock was forced open, the witness relates what occurred, viz.: " I handed it (the box) to Brensinger; he was standing there and we walked into another room. He laid the box on the table and opened it. I was standing by his side; as he opened it I noticed the papers were the same as when I looked in May; the blue paper was on top; he picked them up one after another; had small envelopes in there and some sheets of paper, and a map or sketch of mine and this blue paper, the will. There was a paper marked ' 130 ' on it; there were six ten-dollar gold pieces and six five-dollar gold pieces wrapped up in a paper; twelve five-dollar gold pieces; he fumbled awhile and put them together and went through them, and I said, ' What is the matter? Is there anything wrong?' He said, ' My money is gone.' I said, ' What money?' He said, ' I had some money in here—five hundred dollar bills and a new envelope, and they are gone.' I said, ' Where did you have them?' He said, ' Right on top.' I said, ' It is impossible; nobody could possibly get into the place but you, and you are mistaken.' He said, ' No, I ain't mistaken; I had the money in there and it was taken out just as I expected, as this party had been in the insane asylum.' I told him to go to the front office and asked

him when was the last time he was in; he gave some answer, and I said, ' I will look over the slips;' I looked over the slips where I admitted L. J. Rowe on his power of attorney; asked him if he knew Rowe; he said, 'No, I don't know anything about that name;' asked him, ' Haven't you been sick?' He said, ' Yes, very sick.' I said, ' It seems strange you don't know Mr. Rowe.' ' Well,' he says, ' those fellows have been over here.' I said, 'You better wait until my father gets back.' He didn't seem excited; didn't seem as though he had lost anything extraordinary; was cool and collected, and talked in a general way as he always did; he walked up and down the office once or twice and asked for the morning paper; went to father's desk, got the paper and handed it to him; he laid the box he had in his hand on my desk and sat down and read the newspaper until my father returned, in about an hour." On cross-examination he also testified that he kept his eyes constantly on Rowe while he was in the safety vaults; that Rowe had to stoop down and unlock the box; that Rowe pulled out the box and had it in his hand, and after two or three seconds he pushed it back, closed the door and started to walk out; that his (Rowe's) back was toward me (witness); that he (Rowe) was not directly between witness and the box; that witness could look right in through the door past him (Rowe) to the box.

Thus it will be seen the witness first testifies to a state of circumstances which tend to establish that a man giving the name of Rowe had access to appellee's box by appellee's giving Rowe the key and power of attorney, and thus there was an opportunity to account for the loss of appellee's money, but in his anxiety to show extreme care and caution in guarding the box and its contents, he makes statements which, if true, would make it impossible for Rowe to have taken any money from the box without the knowledge of witness. Also, in order to convince appellee that he was mistaken when he said his money was gone, the witness said, " It is impossible; nobody could possibly get into the place but you, and you are mistaken;" when at the same time witness knew, if his testimony is to be believed, that

ten days before he, witness, had allowed Rowe to have access to the box. Furthermore, it seems strange that one so careful and zealous in caring for this box and contents would have allowed a strange man to take away the power of attorney, when he was told that appellee was not expected to live through the day, and particularly without taking the name of the notary before whom it was acknowledged. The notary, of course, can not be found.

Upon the whole evidence, we think the verdict should stand.

The refused instructions were properly refused, if for no other reason, because they allow the jury to find certain facts without limiting their finding them from the evidence.

The liability of appellant is that of a bailee for hire, which requires of him the exercise of at least ordinary care in keeping property intrusted to him. His care was a question for the jury, and that he did not exercise ordinary care is, we think, shown by the evidence. Safe Dep. Co. v. Pollock, 85 Pa. St. 391; Schouler on Bailments, 106.

The judgment is affirmed.