### Chicago & West Michigan Railway Co. v. Samuel Hull.

1. BILLS OF LADING—*Prior Verbal Agreements.*—Notwithstanding a bill of lading is given by the carrier, it may be shown that there was a prior express oral agreement regarding the shipment. The rule that prior conversations are merged in the subsequent written contract does not apply.

2. VARIANCE—*Must be Pointed Out in the Trial Court.*—In order that an advantage may be taken of a variance on appeal, it must appear that it was specially pointed out in the trial court, so as to enable the plaintiff to avoid it by an amendment.

Assumpsit, on a carrier's contract. Trial in the Circuit Court of Cook County, without a jury; the Hon. CHARLES G. NEELY, Judge, presiding. Finding and judgment for plaintiff of $985. Appeal by defendant. Heard in this court at the March term, 1898. Affirmed. Opinion filed May 9, 1898.

ARND & ARND, attorneys for appellant; WILLIAM ALDEN SMITH and F. A. NIMS, of counsel.

MARCUS KAVANAGH and ALEXANDER S. BRADLEY, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the court.

Appellee brought suit against appellant and other railway corporations which operate lines of railway, constituting the connecting roads from Benton Harbor, Mich., by way of Chicago, to Minneapolis, Minn., to recover the value of two car loads of apples that were delivered in October and November, 1889, by appellee to appellant for shipment, one car load from Watervliet and the other from Benton Harbor, both in Michigan, to be carried to Minneapolis, Minn. A trial before the court, without a jury, resulted in a finding and judgment against appellant for $985, the plaintiff having amended by discontinuing as to the other defendants.

The principal contest on the facts was as to whether the contract of shipment was verbal or was contained in two bills of lading issued by appellant and delivered to appellee the day following the delivery of the apples in each instance. The only witnesses who testified regarding the verbal contract were appellee and William E. Wolfenden, who was agent of appellant at Benton Harbor at the time in question. Appellee testified, in substance, that Wolfenden told him that he would ship the apples direct from Benton Harbor, and also from Watervliet, through on appellant's line to Minneapolis at a certain rate, which he did not remember, but that it was so much per hundred; that Wolfenden said it was better for the apples to be put in a car in Benton Harbor and shipped direct to their destination than it was to ship them by boat, though I (meaning appellee) could get a lower rate; also that appellant's line extended to Minneapolis; that appellant would deliver the apples there at the Wisconsin Central depot without any transfer; that the freight was to be paid at Minneapolis, and that he, appellee, agreed to this and shipped one car from Watervliet in October, 1889, and one car from Benton Harbor in November, 1889; that he had been shipping apples over appellant's road for a number of years; that it was customary when he delivered apples to appellant to give it a shipping order, which, with the shipping receipt, formed one sheet, which was

torn in two in the middle, one being signed by the shipper and delivered to the railroad company, and the other signed by the railroad company and delivered to the shipper.

Wolfenden being asked if he made any verbal agreement with Hull about the shipment of apples mentioned in defendant's Exhibit 1 (the bill of lading of the car of apples shipped from Benton Harbor), "at the time these apples were received" by appellant, answered: "We made no verbal arrangement for the shipping of goods, other than the contract as shown there, except to solicit and quote rates as we might meet business men and parties interested outside of our freight office, making quotations and so on, and to specify rates and so on." He also testified that he had no control or authority over the agent of appellant at Watervliet, but nowhere denies that he had any of the conversation regarding the shipment of the apples as testified to by appellee.

The two bills of lading which were delivered to appellee the day following each shipment were issued by appellant, the one dated November 5, 1889, at Benton Harbor, showing the receipt from S. Hull, by appellant, of 160 barrels of apples, consignee Auction Commission Co., Minneapolis Minn., with "Car 2089" in pencil, and "W. C. R. R. Michewaka, Wis.," also in pencil, written across the face, and at the bottom of the sheet above the name of appellant, printed in large letters, followed by the signature of W. E. Wolfenden, agent, appears the following, printed in very small type, to wit:

"Contents otherwise unknown, for transportation and delivery with as reasonable dispatch as its business will permit, at the station to which addressed, if on the line of this company's road, and if such station be off the line of this road, then at the station where the next carrier on the through line can receive the same upon the following terms and conditions, viz.: That this company shall not be bound to carry by any particular trains; that the company shall not be liable for any loss or injury to said property occasioned by fire while at depots or stations, or during transit

if said property be combustible, or by theft or by unusual or unavoidable accident; that all oils and other liquids, however carried, shall be at owner's risk of leakage; that all glass, earthen and queensware and contents, drugs and medicines, looking-glasses, marble, stoves and their furniture, stove plates and light castings, agricultural implements, cabinetware and furniture not boxed, carriages and other articles of like classes and descriptions, shall be at the owner's risk of breakage or damage by chafing; that oysters, poultry, dressed hogs, fresh meats and provisions of all kinds, trees, shrubbery, fruit, and all other perishable property shall be at owner's risk of frost or decay; also, that all other carriers transporting the property herein receipted for as a part of the through line, shall be entitled to the benefit of all the terms and conditions mentioned, and if a carrier by water, shall be entitled to the benefit of the further conditions that he shall not be liable for loss or damage arising from collision or any other damage incident to lake or river navigation. The company agrees to forward the property to the place of destination as per margin, but will not assume any liability on account thereof, after the same shall have left its line."

The evidence shows that the consignee of this car of apples was changed to S. Hull the day the bill of lading was delivered. The other bill of lading is the same, except that it is dated Watervliet, October 28, 1889; that the goods, 195 barrels of apples, were received from S. Handy; the consignee was S. Hull, Minneapolis, Minn., and there was written on its face under the consignee's name, "via W. C. R. R.," also "N. P. & M. 2089," and it is signed "W. E. Walden, agent." It is testified that "W. C. R. R." means Wisconsin Central Railroad, and that "N. P. & M. 2089" are the initials and number of the car.

The evidence also shows that appellee bought the apples which were shipped from Watervliet from S. Handy, who, as agent for appellee, delivered them to appellant, and he then received the bill of lading and turned it over to appellee the day following its date.

There is also evidence that in each instance when the apples were delivered to appellant, a shipping order was signed and delivered to appellant, but what the contents of the orders were does not appear, the orders not being produced nor any competent evidence of their contents.

The apples shipped from Benton Harbor were never delivered to appellee, but those shipped from Watervliet, 160 barrels, in a badly damaged condition, were offered to appellee, and when offered were worth fifty cents per barrel. The trial court found that there was an express verbal contract for each shipment of apples from Benton Harbor and Watervleit, Michigan, respectively, through to Minneapolis, and that the laws of Illinois control; also found the issues for plaintiff, and assessed his damages at $985, on which judgment was rendered. No question is made as to the correctness of the court's finding of amount, if appellant is liable for any amount.

Appeal was taken, and it is claimed, in substance, 1st, that the trial court erred in holding that the laws of Illinois governed the rights and liabilities of the parties as to the contracts of shipment; 2d, that the laws of Michigan in this regard are different from the laws of Illinois, and should govern; 3d, that the court failed to apply the laws of Illinois; 4th, that the court erred in finding that there were express verbal contracts for the two shipments; 5th, in the admission and exclusion of evidence; 6th, in the denial of motion in arrest of judgment; and, 7th, in refusing to hold certain propositions of law asked by defendant.

1st. The contract of shipment of these apples, whether verbal or written, was made in the State of Michigan, and the law of that State must control in the determination of the rights and liabilities of the parties to it as to its nature, interpretation and effect. R. R. Co. v. Boyd, 91 Ill. 271; Merchants D. T. Co. v. Furthman, 149 Ill. 70.

2d. Having held that the laws of Michigan must control, it is only necessary to determine what are the laws of Michigan, and we need not inquire what are the laws of Illinois, or whether they differ from those of Michigan.

3d.   Nor is it necessary for us to inquire as to whether the trial court failed to apply the laws of Illinois.   We are to determine only whether in an effort to apply the laws of this State, it has or has not in effect applied the laws of Michigan.   The Statutes of Michigan are, viz.:

" Section 3328.   Any railroad company organized under this act, receiving freight for transportation, shall be entitled to the rights and be subject to the liabilities of common carriers, except as herein otherwise provided, but no such company shall be suffered to lessen or abridge its common law liability as a common carrier, unless by an agreement to be signed by both parties thereto."

" Section 3418.   That no railroad company shall be permitted to change or limit its common law liability as a common carrier, by any contract, or in any other manner, except by a written contract, none of which shall be printed, which shall be signed by the owner or shipper of the goods or property to be carried."

They clearly provide that when a railroad company wishes to limit its common law liability as a common carrier of freight, it must have its contract in writing (none of it in print), and signed by the owner or shipper of the goods or property to be carried.   As we have seen this was not done.   Appellee's claim is that the contract of shipment was wholly verbal, and appellant's claim is that the contract is shown wholly by the bills of lading, which are printed, in so far as there is an attempt to limit the common law liability.

Then, if appellant's contention is correct, that the contract is contained in the bills of lading, under the laws of Michigan, these bills not being wholly in writing and not signed by appellee, there could be no limitation by them of appellant's common law liability, and the only inquiry then to be made would be, what was the common law liability of appellant under the bills of lading, but, as appears later, that inquiry is not necessary in this case.

4th.   We think that the finding of the court, that there was an express verbal contract for each of the shipments

from Benton Harbor and Watervliet, respectively, to Minneapolis, is not manifestly against the weight of the evidence, and such it should be before we could interfere with it. The trial court, having seen and heard the witnesses testify, had a better opportunity of determining their credibility than we. Moreover, appellant's witness simply stated his conclusion when he said, " We made no verbal arrangement for the shipping of the goods other than the contract," referring to the bill of lading. The question also limited his answer to " the time when the apples were received," and to the shipment from Benton Harbor. The answer of the witness may be strictly and literally true, and it might still be equally true that he made the verbal agreement which appellee testified he did, before both shipments of apples were delivered to appellant. Appellee was not present when any of the apples were delivered to appellant, and he testifies that if the persons who delivered the apples signed any shipping order, as claimed, that they had no authority to make any agreement as to the shipments of the apples. It may also be true that Wolfenden had no control or authority over the agent of the company at Watervliet, as he says, and still he would have the full right to make a contract of shipment of the apples from Watervliet to Minneapolis, as was testified to by appellee and not denied by Wolfenden. These considerations, as it seems to us, notwithstanding the divers criticisms made by counsel on the testimony of appellee, were sufficient to justify the learned trial judge in finding that there was an express verbal contract for a carrying of both carloads of apples through from the respective points of shipment to Minneapolis, and this fact makes it unnecessary to determine what was appellant's common law liability under the bills of lading. Appellant further contends that the bills of lading, being made and delivered subsequent to the verbal agreement, superseded any previous conversations as testified by appellee, and that the testimony of appellee in that regard was incompetent. We think this contention can not be maintained. The verbal agreement was made before the

goods were delivered, and the bills of lading not made and delivered to appellee until some time afterward, when the apples had been shipped, and there is no evidence that appellee ever assented to any change in the original oral contract he made with Wolfenden. Under these circumstances the rule that prior conversations are merged in the subsequent written contract does not apply. Merchants D. T. Co. v. Furthman, 149 Ill. 70, and cases cited; Bostwick v. Baltimore & O. Ry. Co., 45 N. Y. 712; American Ex. Co. v. Spellman, 90 Ill. 455; Detroit & M. Ry. Co. v. Adams, 15 Mich. 458.

The case of McMillon v. R. R. Co., 16 Mich. 79, specially relied upon by appellant, recognizes the law to be that notwithstanding a bill of lading is given, it may be shown there was an express oral agreement regarding the shipment.

5th. If it were conceded that the court erred in admitting in evidence a conversation between appellee and the cashier of the Wisconsin Central road to the effect that a mistake was made in delivering the Watervliet shipment to Hull & Co., we are unable to see how it in any way prejudiced appellant. The same may be said as to the refusal of the court to allow appellant to show previous dealings between appellant and appellee, and that in all instances shipping orders and bills of lading were interchanged. None of this evidence could possibly, in our opinion, have changed the result.

6th. As we understand counsel's contention that the court erred in denying the motion in arrest of judgment, it is because the evidence fails to prove the allegations of the declaration—in other words, that there is a variance. The motion in arrest fails to show that any alleged variance was called to the attention of the trial court. This was necessary before it can be available here. The rule is a salutary one, because the plaintiff may amend when the point of variance is made, and thus obviate the objection. Mayer v. Brensinger, 74 Ill. App. 475; McCormick H. M. Co. v. Sendzikowski, 72 Ill. App. 402, and cases cited.

But it is contended that if the motion in arrest can not

now be availed of, it having been held in R. R. Co. v. White, 166 Ill. 378, that when a motion for new trial is general, not specifying any reasons therefor, any existing reason may be urged, that therefore this alleged variance may be availed of under the motion for new trial. We think not; the trial being before the court, a motion for new trial was unnecessary, and besides, it is settled that before a variance can be taken advantage of on appeal, the variance must have been specially pointed out in the trial court, so as to enable the plaintiff to amend and thus avoid it. Indianapolis & St. L. R. R. Co. v. Estes, 96 Ill. 470; Chicago, B. & Q. R. R. Co. v. Dickson, 143 Ill. 371.

We, however, think there was no variance; that the proof in substance sustains the allegations of the second additional count of the declaration.

7th. Appellant asked the court to hold eleven different propositions of law, all of which were refused, and all except the first, ninth and tenth were marked "Refused as inapplicable." We deem it unnecessary to set out these propositions. From a careful examination of each of them, we think the court was correct in refusing them all as inapplicable to the case at bar, they being predicated on a supposed state of facts not found by the court to exist, except, perhaps, the sixth, which asks the court to hold that the papers introduced in evidence, which were issued by appellant, are bills of lading. If this proposition, as we suppose it did, referred to two receipts issued to appellee for the apples shipped, then perhaps the court erred; but as it was presented it is too indefinite, and was properly refused. In any event its refusal could not have prejudiced appellant. The fact that the court held that the laws of Illinois controlled, is, in our opinion, immaterial, for the reason that the contract of shipment was verbal, and for carriage through from the points of shipment in Michigan to Minneapolis and delivery there to appellee, and it could make no difference whether the laws of Illinois or the laws of Michigan controlled. The judgment is affirmed.